TREG R. TAYLOR
ATTORNEY GENERAL

Jessica M. Alloway
Kimberly D. Rodgers
Assistant Attorneys General
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-6612
Facsimile: (907) 269-3697
Email: jessie.alloway@alaska.gov
       kimber.rodgers@alaska.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Doug Smith, *et al.*, | ) |
| Plaintiffs, | ) Case No.: 3:22-cv-00077-SLG |
| v. | ) |
| Anne Helzer, in her official capacity as chair of the Alaska Public Offices Commission, *et al.*, | ) **STATE DEFENDANTS' MOTION TO DISMISS (Fed. R. Civ. P. 12(b)(6))** |
| Defendants, | ) |
| and | ) |
| Alaskans for Better Elections, Inc. | ) |
| Intervenor-Defendant. | ) |

"Alaska has a long history of regulating political influence and campaign finance."[1] At times "public confidence and trust in the integrity of the legislature [has

---

[1]     *Alaska Right to Life Comm. v. Miles*, 441 F.3d 773, 777 (9th Cir. 2006).

been] 'disturbingly low.'"[2] This led the Alaska legislature to overhaul Alaska's campaign finance law in 1996 with the goal of "'restor[ing] the public's trust in the electoral process and to foster good government.'"[3] The legislature—and the voters via initiatives—have continued to refine Alaska law since then.[4] The Supreme Court's decision in *Citizens United v. Federal Election Commission* in 2010 resulted in additional changes.[5] And the most recent tweaks came in November 2020 (effective February 2021) when Alaska voters enacted Ballot Measure 2.

The plaintiffs' complaint challenges certain disclosure and disclaimer requirements, some enacted recently via Ballot Measure 2 and others enacted previously by the Alaska legislature, having been in place and enforced by the Alaska Public Offices Commission (APOC) for years. None of the requirements restrict anyone's right to speak. All of the requirements enhance the political marketplace of ideas by supplying more (not less) information. Because these requirements are in line with similar disclosure laws long upheld by the Supreme Court,[6] and because nothing in recent Supreme Court

---

[2]     *Id.* (quoting *State v. Alaska Civil Liberties Union*, 978 P.2d 597, 602 (Alaska 1999); *see also* 1996 Alaska Sess. Laws ch. 48, § 1(a)(3) (finding that "organized special interests are responsible for raising a significant portion of all election campaign funds and may thereby gain an undue influence over election campaigns and elected officials, particularly incumbents").

[3]     *Miles*, 441 F.3d at 778 (quoting 1996 Alaska Sess. Laws ch. 48, § 1(b)).

[4]     *E.g.*, 2002 Alaska Sess. Laws, Third Special Sess., ch. 1; 2003 Alaska Sess. Laws ch. 108; 2006 Primary Election Ballot Meas. 1; 2008 Alaska Sess. Laws ch. 106.

[5]     558 U.S. 310 (2010); 2010 Alaska Sess. Laws ch. 36.

[6]     *Buckley v. Valeo*, 424 U.S. 1, 68 (1976) (calling disclosure laws "the least restrictive means of curbing the evils of campaign ignorance and corruption").

*Smith, et al. v. Helzer, et al.*                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 2 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 2 of 36

decisions puts this precedent into question,[7] the State defendants respectfully request the Court dismiss the plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6).

## FACTUAL BACKGROUND

I. **Alaska's disclosure and disclaimer law.**

After *Citizens United*, the Alaska legislature made several changes to the campaign disclosure regime that are relevant to this litigation.[8] Before *Citizens United*, Alaska law limited who could make "independent expenditures" in candidate elections to individuals, groups and non-group entities.[9] Because labor unions and corporations did not fall within the definitions of individuals, groups, or non-group entities,[10] corporations and labor unions were prohibited from making any expenditures in candidate elections. In *Citizens United*, the Supreme Court held "the Government may regulate corporate political speech through disclaimer and disclosure requirements, but it may not suppress that speech altogether."[11] The decision significantly changed the legal landscape and forced Alaska to change its statutory scheme.

Recognizing corporations and labor unions have a First Amendment right to engage in speech intended to influence elections, Alaska changed course. Rather than

---

[7]      *See Gaspee Project v. Mederos*, 13 F.4th 79, 82 (1st Cir. 2021) (upholding Rhode Island's election disclosure statute, which required the disclosure of donations over $1,000 and the disclaimer of sponsorship and disclosure of top donors); *cert. denied*, 2022 WL 1205841 (U.S. Apr. 25, 2022).

[8]      558 U.S. 310 (2010).

[9]      AS 15.13.135(a) (2009).

[10]      AS 15.13.400(8), (11), (13) (2009).

[11]      *Citizens United*, 558 U.S. at 319.

*Smith, et al. v. Helzer, et al.*      Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))      Page 3 of 36

Case 3:22-cv-00077-SLG    Document 31    Filed 05/16/22    Page 3 of 36

prohibiting political speech, Alaska followed the path blessed by the Supreme Court and began relying more heavily on disclaimer and disclosure requirements to fulfill the significant government interest of having an informed electorate.[12]

First, the Alaska legislature modified the disclaimers required on communications under AS 15.13.090. Since 1974, Alaska has required a "paid for by" disclaimer for all communications intended to influence the election of a candidate.[13] In 2010, the legislature amended AS 15.13.090 to add additional requirements and to apply these provisions to corporations and labor unions by using the word "person," which already included them.[14] As of the 2010 legislation, the disclaimer must include the person's address or principal place of business; and for a person other than an individual or candidate, (1) the name and title of the principal officer; (2) the name, city, and state of residence or principal place of business of the top three contributors; and (3) a statement that the principal officer approved the communication.[15] In addition, videos—a communication containing both sound and visual components—must include written *and*

---

[12]    *See id.* at 369 ("The Court has explained that disclosure is a less restrictive alternative to more comprehensive regulations of speech."); *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 223 (2014) ("[D]isclosure often represents a less restrictive alternative to flat bans on certain types or quantities of speech.").

[13]    1974 Alaska Sess. Laws ch. 76, § 1 ("All advertisements, billboards, handbills, paid-for television and radio announcements and other communications intended to influence the election of a candidate shall be signed or identified by the words 'paid for by' followed by the name and address of the candidate or campaign treasurer of the candidate or group on whose behalf the communication appears.").

[14]    2010 Alaska Session Laws ch. 36, §§ 13-14; AS 15.13.400(14) (2010).

[15]    AS 15.13.090(a), (f) (2010); *see also* 2010 Alaska Sess. Laws ch. 36, §§ 13-14.

*Smith, et al. v. Helzer, et al.*                                                Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))                    Page 4 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 4 of 36

audio disclaimers, providing all the information required for each type of component.[16]

Second, the Alaska legislature amended the disclosure requirements for independent expenditures to require corporations and labor unions to provide source information as well as information about actual expenditures.[17] Before *Citizens United,* the statutes and regulations required "every individual, person, nongroup entity, or group making an expenditure" to make a full report of expenditures within 10 days.[18] These expenditure-reporting provisions applied to corporations or labor unions after *Citizens United* because Alaska law defined "person" to include a corporation or labor union.[19] But the law did not require a person, other than a candidate, group, or nongroup entity, to report the source of contributions, so corporations and labor unions would not have been required to report *source* information.[20] In the same 2010 legislation that expanded the disclaimer requirements, the Alaska legislature closed this loophole by amending

---

[16]     AS 15.13.090(c)-(d). The audio component may simplify the disclaimer by omitting the city and state of residence or principal place of business for the top contributors. AS 15.13.090(d).

[17]     2010 Alaska Sess. Laws ch. 36, § 4.

[18]     AS 15.13.040(d)-(e) (2009), (e); 2 AAC 50.270(c) (2009) (providing that "a person making an independent expenditure must disclose the following on an independent expenditure report under AS 15.13.040(d) and (e): (1) the date of the expenditure; (2) the amount of the expenditure; (3) the check number, if the expenditure is paid by check; (4) the name and address of the payee; (5) a description of items or services purchased; (6) identification of the candidate or ballot proposition the expenditure was intended to influence; (7) a statement as to whether the expenditure was intended to support or oppose the candidate or ballot proposition").

[19]     AS 15.13.400(14) (2009); AS 01.10.060; *see also* AS 15.13.084 (2009) (stating that a "person may not make an expenditure anonymously," except for certain expenditures paid for by a natural person).

[20]     *See* AS 15.13.040(a)-(b), (d)-(e), (j) (2009); AS 15.13.400(14) (2009).

*Smith, et al. v. Helzer, et al.*                                                 Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 5 of 36

AS 15.13.040(d).[21] The statute now provides that "[e]very person making an independent expenditure shall make a full report of expenditures made and *contributions received*, upon a form prescribed by the commission."[22] The report must include, in addition to other information, the date of the contribution as well as the name and address of the contributor.[23] When the contributor is an individual who contributes more than $50, information about the contributor's employer is also required.[24] When the contributor is not an individual, the report must include the name and address of each officer and director of the contributor.[25] Generally, a report must be filed with APOC no later than 10 days after an independent expenditure is made.[26] But the timeframe shortens as an election approaches—independent expenditure exceeding $250 and made within nine days of an election must be reported within 24 hours.[27]

After ten years of experience in how these new provisions worked on the ground, Alaska voters enacted Ballot Measure 2 to close gaps in the statutory scheme and to require more information for independent expenditures.[28] The plaintiffs challenge three

---

[21]    2010 Alaska Sess. Laws ch. 36, § 3.

[22]    AS 15.13.040(d) (emphasis added).

[23]    AS 15.13.040(e); *see* 2010 Alaska Sess. Laws ch. 36, § 4.

[24]    AS 15.13.040(e); *see* 2010 Alaska Sess. Laws ch. 36, § 4.

[25]    AS 15.13.040(e); *see* 2010 Alaska Sess. Laws ch. 36, § 4.

[26]    AS 15.13.110(h).

[27]    *Id.*

[28]    2020 Alaska Laws Initiative Meas. 2, § 3 ("The people of Alaska have the right to know in a timely manner the source, quantity, timing, and nature of resources used to influence candidate elections in Alaska. This right requires the prompt, accessible, comprehensible, and public disclosure of the true and original sources of funds used to

*Smith, et al. v. Helzer, et al.*                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))            Page 6 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 6 of 36

aspects of this law and the disclaimer requirements enacted more than a decade ago.

First, the plaintiffs challenge the donor disclosure requirement. Dkt. 1 at 11-12. Any donor who contributes $2,000 or more in a calendar year to an entity that made independent expenditures in candidate elections in the current or previous election cycle or is likely to do so in the current election cycle must report the contribution within 24 hours.[29] A person who delays reporting is subject to a civil penalty of up to $1,000 a day for each day the report is delinquent.[30]

Second, the plaintiffs challenge the disclaimer requirements. Dkt. 1 at 12-13. In addition to the top-three-donor and stand-by-your ad-disclaimers, Ballot Measure 2 added that an ad by an entity receiving most of its funding from outside Alaska say so if the communication has a print or video component.[31] It also required that all disclaimers "remain onscreen throughout the entirety of the communication."[32] An entity that leaves out the required disclaimer is subject to a civil penalty of up to $50 a day.[33]

Third, the plaintiffs challenge the requirement that disclosures include the "true source" of the money used for independent expenditures.[34] Dkt. 1 at 13-14. The "true source" is defined as the "person or legal entity whose contribution is funded from

---

influence these elections, and is essential to the rights of free speech, assembly, and petition guaranteed by the First Amendment to the United States Constitution.").

[29]    AS 15.13.040(r).

[30]    AS 15.13.390(a)(2).

[31]    AS 15.13.090(g).

[32]    AS 15.13.090(c), (g).

[33]    AS 15.13.390(a)(4).

[34]    *See* AS 15.13.040 & AS 15.13.110(k) (requiring reporting of "true source").

*Smith, et al. v. Helzer, et al.*                                          Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))              Page 7 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 7 of 36

wages, investment income, inheritance, or revenue generated from selling goods or services," and includes an entity that got the funds through "contributions, donations, dues, or gifts" only if those were "less than $2,000 per person per year."[35] A person who misreports or fails to disclose the "true source" of the funds for the contribution is subject to a civil penalty of up to the contribution amount or for intentional violations, up to three times the contribution amount.[36]

## II.    The plaintiffs' complaint.

The plaintiffs are five individuals who "sometimes donate[] amounts in excess of $2,000 to organizations that engage in independent expenditures." Dkt. 1 at 2-3. They are also two independent expenditure groups—Families of the Last Frontier and Alaska Free Market Coalition—that receive donations over $2,000 and make independent expenditures in excess of $2,000. Dkt. 1 at 3. Families of the Last Frontier also solicits donations from outside of Alaska and these donations have exceeded 50% of its revenue in the past. Dkt. 1 at 3.

Each of the individual plaintiffs allege that they would like to continue giving more than $2,000 to support various unknown causes. Dkt. 1 at 5-7. But, they allege, they also "believe strongly in the right of private association, and therefore the compelled disclosures required by Ballot Measure 2 would be in conflict with their principles." Dkt. 1 at 7. They also "fear that publicity listing their support of their preferred causes . . . may lead to reprisals against them and their business interests in the current climate of

---

[35]    See AS 15.13.400(19) (defining "true source").

[36]    AS 15.13.390(a)(3).

*Smith, et al. v. Helzer, et al.*                                      Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))        Page 8 of 36

cancel culture." Dtk. 1 at 7. They finish with an even more general allegation that the disclosure requirements "are a serious and compelling disincentive" for them to continue giving. Dkt. 1 at 7.

Families of the Last Frontier and Alaska Free Market Coalition allege that they "believe[] strongly in the right of private association" and that the disclosure requirements would be in conflict with the "principles of the organization[s]." Dkt. 1 at 8 & 10. Both organizations contend that listing their top five donors represents "an arbitrary sample that is not representative of the individuals and entities that support their work" and that they fear publicity listing their donors "may lead to reprisals against donors and their business interests in the current climate of cancel culture."[37] Dkt. 1 at 9-10. Like the individual plaintiffs, the organizations make a general allegation that the disclosure requirements are burdensome and a "serious and compelling disincentive for potential donors." Dkt. 1 at 9-10.

The plaintiffs' complaint includes three counts. Dkt. 1 at 11-14. All three counts are facial challenges to the identified disclosure and disclaimer provisions and all three counts are brought under 42 U.S.C. § 1983 and raise a First Amendment challenge:

1. Count I challenges the requirement that individual donors disclose contributions of more than $2,000 to an independent expenditure entity within 24 hours;

---

[37]     Alaska does not require that disclaimers list the top *five* donors, only the top three. *See* AS 15.13.090(a)(2)(C), (e).

*Smith, et al. v. Helzer, et al.*                                          Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 9 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 9 of 36

2. Count II challenges the requirement that election-related communications include a stand-by-your-ad disclaimer, a top-donor disclaimer, and an out-of-state disclaimer;

3. Count III challenges the requirement that disclosures include the "true source" of the money used for independent expenditures. Dkt. 1 at 4, 11-14.

The plaintiffs seek declaratory and injunctive relief. Dkt. 1 at 14.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the allegations set forth in the complaint. Dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"[38] Although the Court generally accepts as true the allegations in the complaint and construes the pleading in the light most favorable to the non-moving party,[39] a plaintiff must provide more than "labels and conclusions."[40] "[T]o be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."[41] A complaint cannot survive a motion to dismiss based solely on

---

[38]  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

[39]  *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

[40]  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." (cleaned up)).

[41]  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

*Smith, et al. v. Helzer, et al.*                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))                Page 10 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 10 of 36

conclusory allegations of law.[42] And "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are conclusory and not entitled to be assumed true."[43] Instead, the plaintiff must allege enough facts to state a claim to relief that is "plausible on its face."[44] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45]

## ARGUMENT

Alaska's disclosure and disclaimer requirements are not unusual, nor do they stretch the well-trod boundaries already established in this area of the law. Federal courts have upheld campaign finance disclosure requirements for decades—indeed, they praise such laws as a less burdensome alternative to limiting speech.[46] "Sunlight is said to be the best of disinfectants" and disclosure is "a reasonable and minimally restrictive method of furthering First Amendment values by opening the basic processes of our federal election system to public view."[47] As the Supreme Court explained in *Citizens United*, "[d]isclaimer and disclosure requirements may burden the ability to speak, but they

---

[42]     *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[43]     *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 555).

[44]     *Twombly*, 550 U.S. at 570.

[45]     *Iqbal*, 556 U.S. at 678.

[46]     *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 369 (2010) ("The Court has explained that disclosure is a less restrictive alternative to more comprehensive regulations of speech."); *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 223 (2014) ("[D]isclosure often represents a less restrictive alternative to flat bans on certain types or quantities of speech.").

[47]     *Buckley v. Valeo*, 424 U.S. 1, 67, 82 (1976).

*Smith, et al. v. Helzer, et al.*                                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 11 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 11 of 36

'impose no ceiling on campaign-related activities,' and 'do not prevent anyone from speaking.'"[48] Although the plaintiffs may believe that last year's Supreme Court decision in *Americans for Prosperity Foundation v. Bonta*[49] altered the legal landscape for disclosure laws, so far the only court of appeals to apply that decision to campaign finance disclosures *upheld* them—affirming the district court's dismissal of the plaintiffs' complaint under Civil Rule 12(b)(6)—and the Supreme Court denied certiorari.[50] The Court should follow the lead set by the First Circuit in *Gaspee Project v. Mederos* and grant the State defendants' motion to dismiss.[51] The plaintiffs do not have a First Amendment right to anonymously influence elections.

## I.     The donor disclosure requirements for independent expenditure entities do not violate the First Amendment (Count 1).

Count I of the complaint challenges the disclosure requirement that applies to a donor who contributes $2,000 or more in a calendar year to an entity that made independent expenditures in candidate elections in the current or previous election cycle or is likely to do so in the current election cycle.[52] Dkt. 1 at 11-12. A donor covered by this disclosure requirement must report the contribution within 24 hours.[53]

---

[48]     558 U.S. at 366 (quoting *Buckley*, 424 U.S. at 64, and *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 201 (2003) (internal punctuation omitted)).

[49]     141 S. Ct. 2373 (2021).

[50]     *Gaspee Project v. Mederos*, 13 F.4th 79, 82 (1st Cir. 2021); *cert. denied*, 2022 WL 1205841 (U.S. Apr. 25, 2022).

[51]     *See id* at 83.

[52]     *See* AS 15.13.040(r).

[53]     *Id*.

*Smith, et al. v. Helzer, et al.*                                              Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 12 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 12 of 36

To justify burdening First Amendment rights, disclosure laws must survive "exacting scrutiny," which requires (1) a "sufficiently important governmental interest" and (2) "that the disclosure requirement be narrowly tailored to the interest it promotes."[54] This is not as rigorous as the "least restrictive means" test of strict scrutiny—instead, it falls somewhere between strict and intermediate scrutiny.[55]

Here, the State's interest in an informed electorate is a "sufficiently important governmental interest" to satisfy the first requirement of exacting scrutiny.[56] As the First Circuit explained in *Gaspee Project*, the Supreme Court recognized this interest as supporting disclosure laws in *Buckley*, *McConnell*, and *Citizens United*.[57] In *Buckley*, the Court reasoned that disclosure of independent expenditures "helps voters to define more of the candidates' constituencies."[58] In *McConnell*, the Court observed that "independent groups were running election-related advertisements 'while hiding behind dubious and misleading names,'" meaning disclosure would "help citizens 'make informed choices in

---

[54]    *Americans for Prosperity*, 141 S. Ct. at 2385. In *Citizens United*, the Court described the standard as calling for "a 'substantial relation' between the disclosure requirement and [the government] interest." 558 U.S. at 366-67. The Supreme Court has not yet applied the newer *Americans for Prosperity* formulation to a campaign finance disclosure law, but the laws here survive under either formulation of the standard.

[55]    *Americans for Prosperity*, 141 S. Ct. at 2383.

[56]    *See Buckley*, 424 U.S. at 14-15 ("In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential.").

[57]    13 F.4th at 87.

[58]    424 U.S. at 81.

*Smith, et al. v. Helzer, et al.*                                      Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 13 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 13 of 36

the political marketplace.'"[59] Then not long ago, in *Citizens United*, the Court reaffirmed this "governmental interest in providing information to the electorate" as supporting disclosures and disclaimers for independent expenditures, noting that "the public has an interest in knowing who is speaking about a candidate shortly before an election."[60]

This informational interest is not weak, but rather—in the Ninth Circuit's view— "vital," "important and well-recognized," and "only likely to increase" in magnitude.[61] Indeed, current political realities make this interest more compelling now than it was at the time of *Buckley*.[62] As the Ninth Circuit explained, "[a]ccess to reliable information becomes even more important as more speakers, more speech—and thus more spending—enter the marketplace, which is precisely what has occurred in recent years."[63] Informing the electorate "is vital to the efficient functioning of the marketplace of ideas, and thus to advancing the democratic objectives underlying the First Amendment," and disclosure laws "help ensure that voters have the facts they need to evaluate the various messages competing for their attention."[64] The First Circuit has similarly noted that in "an age characterized by the rapid multiplication of media outlets and the rise of internet

---

[59]  *Citizens United*, 558 U.S. at 367 (describing and quoting *McConnell*, 540 U.S. at 196-97).

[60]  *Citizens United*, 558 U.S. at 368 & 369; *see also First Nat'l Bank v. Bellotti*, 435 U.S. 765, 792 n.32 (1978) ("Identification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected.").

[61]  *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1005-08 (9th Cir. 2010).

[62]  424 U.S. at 1.

[63]  *Human Life*, 624 F.3d at 1007.

[64]  *Id*. at 1005.

*Smith, et al. v. Helzer, et al.*                                          Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))              Page 14 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 14 of 36

reporting," citizens "rely ever more on a message's source as a proxy for reliability and a barometer of political spin."[65]

In addition to informing voters, disclosure laws also "deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity."[66] It is true that the Supreme Court has said that anti-corruption or regulatory avoidance interests do not justify *banning* or *capping* independent expenditures.[67] But applying that reasoning to ban or limit disclosure requirements would be too limiting. The conclusion that independent expenditures do not risk corruption rests on the premise that they are not coordinated with candidates.[68] But this premise rests in turn on an assumption that the public and regulators actually know who is doing what when it comes to political spending. If funders remain in the shadows, the public cannot be assured that no corrupt transactions are taking place—indeed, the public cannot even be assured that the money spent to influence their votes does not originate from prohibited foreign sources.[69] Disclosure laws thus further the government's anti-

---

[65]   *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 57 (1st Cir. 2011).

[66]   *Buckley*, 424 U.S. at 67 ("Congress could reasonably conclude that full disclosure during an election campaign tends 'to prevent the corrupt use of money to affect elections.'"); *see also McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 224 (2014) ("Today, given the Internet, disclosure offers much more robust protections against corruption.").

[67]   *See Citizens United*, 558 U.S. at 357.

[68]   *See SpeechNow.org v. Fed. Election Comm'n*, 599 F.3d 686, 693 (D.C. Cir. 2010) (explaining that "[t]he independence of independent expenditures was a central consideration in the Court's decision" in *Citizens United*).

[69]   *See* AS 15.13.068; *cf. SpeechNow.org*, 599 F.3d at 698 ("[R]equiring disclosure of such information deters and helps expose violations of other campaign finance

*Smith, et al. v. Helzer, et al.*                                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 15 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 15 of 36

corruption and enforcement interests even if those interests do not justify limiting independent expenditures. The first part of exacting scrutiny is doubly satisfied here.

Moving on to the second part of exacting scrutiny, the donor disclosure law is narrowly tailored to further these important governmental interests. Several features of the law keep it from being overbroad. For one thing, small contributions need not be disclosed—only significant ones totaling $2,000 or more.[70] This is twice as high as the threshold for the disclosures upheld in *Citizens United*[71] and by the First Circuit in *Gaspee Project*.[72] For another thing, disclosure is triggered only by a "contribution" to an entity that makes "independent expenditures" in candidate elections, so the definitions of "expenditure" and "contribution"—and the law's application only to candidate elections—further narrow the coverage.[73] An "expenditure" in candidate elections means spending money "for the purpose of . . . influencing the nomination or election of a

_____

restrictions, such as those barring contributions from foreign corporations or individuals.").

[70]    AS 15.13.040(r).

[71]    *See Citizens United*, 558 U.S. at 366-67; 52 U.S.C. § 30104(f)(2) (providing that a disclosure statement identify contributors who "contributed an aggregate amount of $1,000 or more").

[72]    *See Gaspee Project*, 13 F.4th at 88. Relatedly, the First Circuit has upheld laws requiring independent expenditure entities to disclose the identity of donors who have contributed far less. *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 58 (1st Cir. 2011) (concluding that donor disclosure requirements were narrowly tailored in that they "require[ed] disclosure only of . . . identifying information for any contributors who have given more than $50 to the PAC to support or oppose a candidate or campaign"). Alaska law requires each person making an expenditure to disclose the name and address of each contributor. AS 15.13.040(e)(5).

[73]    AS 15.13.040(r).

*Smith, et al. v. Helzer, et al.*                                               Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))        Page 16 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 16 of 36

candidate."[74] A definitional carve-out tailors this to exclude an "issues communication," which identifies a candidate but "addresses an issue of national, state, or local political importance and does not support or oppose a candidate for election to public office."[75]

The disclosure law does not contain an explicit "opt out" provision for donors who do not want their money used to make such expenditures, but the freedom to opt out is inherent in the definition of "contribution." A "contribution" as relevant here means a donation "that is made for the purpose of . . . influencing the nomination or election of a candidate."[76] If a donor gives money with no such purpose, that is not a "contribution" that triggers reporting. Donors and recipients can avoid the need to report donations that will not go toward independent expenditure activity by simply making their intentions clear to one another in their transactions: the donor can tell the recipient that her money should not be used for this purpose, and the recipient can place the money in an account that will not be used for this purpose. Indeed, an entity that makes independent expenditures already must maintain a "political activities account" for those expenditures, so it can simply put the donor's funds in a different account.[77]

The disclosure law is further tailored by a temporal limitation: it applies only to contributions to an entity that made independent expenditures in the current or previous

---

[74]     AS 15.13.400(7) (defining "expenditure").

[75]     AS 15.13.400(7)(C) & (13). In close proximity to an election, issue ads could become "electioneering communications," which constitute "expenditures." AS 15.13.400(6) & (7)(C).

[76]     AS 15.13.400(4)(A)(i).

[77]     AS 15.13.052.

*Smith, et al. v. Helzer, et al.*                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))                Page 17 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 17 of 36

election cycle, or "that the contributor knows or has reason to know is likely to make independent expenditures" in the current cycle.[78] Although this might sweep in some excess information at the margins—because not every group that made independent expenditures in the last election cycle will do so this cycle—it does not make the law overbroad. If the law covered only contributions to entities that had *already* made expenditures this cycle, many relevant contributions would be missed: an entity could amass a secret war chest and delay reporting by beginning its expenditures at the last minute, leaving voters to sort through reports after the election. Covering contributions to entities *likely* to make relevant expenditures—because they have done so recently—is thus reasonable. And again, donations that are segregated from independent expenditure activity are not reportable "contributions," so an entity that does not intend to make further independent expenditures can avoid reporting by segregating funds.

Alaska's disclosure law thus stands in contrast to the overbroad ones the Supreme Court disapproved in *Shelton* and *Americans for Prosperity*, both of which required vastly more disclosure than was useful.[79] In *Shelton*, an Arkansas statute required teachers to disclose every organization to which they belonged or contributed.[80] Although the Court acknowledged the importance of "the right of a State to investigate the competence and fitness of those whom it hires to teach in its schools," the statute was overbroad for this purpose because it covered "every conceivable kind of associational

---

[78]   AS 15.13.040(r).

[79]   *Shelton v. Tucker*, 364 U.S. 479, 480 (1960); *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021).

[80]   364 U.S. at 480.

*Smith, et al. v. Helzer, et al.*                              Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))        Page 18 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 18 of 36

tie," many of which "could have no possible bearing upon the teacher's occupational competence or fitness."[81] Similarly in *Americans for Prosperity*, the Court saw a "dramatic mismatch" between the up-front, across-the-board disclosures that California required from charities and the state interest in policing charity fraud, because the disclosed information was never used to initiate investigations and only became marginally useful in a handful of cases each year after complaints were filed.[82] Unlike that law—which "cast[] a dragnet" for information that was rarely used—nearly all of Alaska's required donor disclosures directly serve the interest in informing voters about election spending.[83]

The plaintiffs complain that the donor disclosure law is "repetitive" because recipients must also report contributions. Dkt. 1 at 11-12. But the two halves of the law work together to give voters complete, accurate, real-time information about the sources of money being funneled into independent expenditures. The donor is the one who can trace the "true source" of the donor's funds, so the law reasonably obligates the donor to provide and certify the truth of this information.[84] Placing this obligation solely on the recipient would lead to incomplete or inaccurate reporting of true sources. Requiring both sides of the transaction to report also ensures that no transactions are missed.

The plaintiffs make general allegations about these additional requirements being

---

[81]     *Id.* at 485, 488.

[82]     141 S. Ct. at 2386.

[83]     *Id.* at 2387.

[84]     *See* AS 15.13.400(19) (defining "true source").

*Smith, et al. v. Helzer, et al.*                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 19 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 19 of 36

burdensome and a "serious and compelling disincentive" for the individual plaintiffs to continue giving. Dkt. 1 at 7. But this bare assertion, without more, is not sufficient to state a claim.[85] The plaintiffs offer no factual allegation that this task is any more difficult than writing a $2,000 check. And the Seventh Circuit has previously said that a "simple, one-page form" is a "minimally burdensome regulatory requirement . . . reasonably tailored to the public's informational interest."[86] The plaintiffs allege no facts to support their suggestion that individual donors will find compliance difficult or overly burdensome.

The plaintiffs may suggest that the requirement is overly burdensome simply because it is a new requirement, so donors will have to learn about it. But the State is not aware of any authority for the idea that a law's novelty is itself a serious burden—such a rule would make any changes to the law difficult to justify. Moreover, entities wishing to receive large contributions will surely play a part in educating their donors about the need to complete this new form.

The plaintiffs offer no factual allegation to support any suggestion that this requirement will be overly burdensome. A donor need only know a little bit about who they are giving money to. It is reasonable to expect that someone who wants to give an entity over $2,000 will already know whether the recipient makes independent

---

[85]    *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[86]    *See Wis. Right to Life, Inc. v. Barland*, 751 F.3d 804, 843 & 841 (7th Cir. 2014); *see also Yamada v. Snipes*, 786 F.3d 1182, 1195 (9th Cir. 2015) (concluding that registration and reporting requirements were not unduly onerous).

*Smith, et al. v. Helzer, et al.*                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 20 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 20 of 36

expenditures in candidate elections, and if not, that the entity would gladly give the donor the information necessary to facilitate such a large donation. And a donor need not have prophetic knowledge because if the donor is not giving money for political purposes and has no reason to know that the recipient intends to make independent expenditures, the donor disclosure obligation is not triggered. Speculation that the State will apply the law too broadly—or that problematic cases might arise at the margins—cannot sustain a facial challenge, which requires showing that a "substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."[87] In any event, the allegations in the plaintiffs' complaint offer nothing close to a "plausible claim."[88]

Because the donor disclosure requirement is narrowly tailored to serve important state interests, the Court should grant the State's motion to dismiss Count I.

## II.    The top-donor disclaimer requirement does not compel speech in violation of the First Amendment (Count II).

Count II of the complaint challenges the requirement—in place since 2010—that ads include a "paid for by" disclaimer indicating the entity responsible, its city and principal place of business, and its top three contributors.[89] Dkt. 1 at 12-13. The plaintiffs incorrectly allege that the top *five* donors must be listed, thus challenging a more burdensome law than Alaska actually has (such as the top-five disclaimer upheld by the

---

[87]    *Americans for Prosperity*, 141 S. Ct. at 2387.

[88]    *See Twombly*, 550 U.S. at 547 (requiring a claim that is "plausible on its face").

[89]    *See* AS 15.13.090(a)-(e).

*Smith, et al. v. Helzer, et al.*                                              Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 21 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 21 of 36

First Circuit in *Gaspee Project*).[90] Dkt. 1 at 9-10.

The plaintiffs also mistakenly allege that strict scrutiny applies here. Dkt. 1 at 12. On the contrary, in *Citizens United*, the Supreme Court applied exacting scrutiny to both disclosures and disclaimers.[91] And it did so even though the plaintiff had advocated for strict scrutiny—like the plaintiffs here—on the theory that disclaimers constitute "compelled speech" or "content-based restrictions on political speech."[92] The Ninth Circuit recognizes *Citizens United* as the controlling law on political disclaimers.[93] This Court should follow *Citizens United*—the Supreme Court's most recent pronouncement on political disclaimers and apply exacting scrutiny to political disclaimers.

Not only did the Supreme Court in *Citizens United* decline to apply strict scrutiny, but it also upheld the challenged disclaimer law. It recognized that political disclaimers "provid[e] the electorate with information," "insure that the voters are fully informed about the person or group who is speaking," and "[a]t the very least . . . avoid confusion by making clear that the ads are not funded by a candidate or political party."[94] The Court dismissed the concern—similar to the plaintiffs' here—that disclaimers "decrease[d] both the quantity and effectiveness of the group's speech by forcing it to devote four seconds

---

[90]     *See Gaspee Project*, 13 F.4th at 91.

[91]     *See Citizens United*, 558 U.S. at 366.

[92]     *See* Br. for Appellant 43-44, *Citizens United*, 558 U.S. 310 (No. 08-205), 2009 WL 61467 (arguing that "oral and written disclaimers" are "content-based restrictions on political speech" and "compelled speech requirements" subject to strict scrutiny).

[93]     *See Yamada*, 786 F.3d at 1202.

[94]     558 U.S. at 368 (internal quotation marks and citations omitted).

*Smith, et al. v. Helzer, et al.*                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))            Page 22 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 22 of 36

of each advertisement to the spoken disclaimer."[95] The Court was also unpersuaded by the argument that including the disclaimers would "distort the message" of the group's ads.[96] In *Yamada v. Snipes*, the Ninth Circuit relied on *Citizens United* to uphold political disclaimers.[97] These cases are directly on point and should be dispositive.

The plaintiffs may suggest that the Supreme Court's decision in *National Institute of Family & Life Advocates v. Becerra (NIFLA)* somehow undermines Alaska's disclaimer requirement. But that case—unlike *Citizens United*—was not about political disclaimers, and the disclaimers there were much more burdensome.[98] Those disclaimers required pro-life pregnancy centers to "inform women how they can obtain state-subsidized abortions," which was "the very practice that [they] are devoted to opposing" and thus "plainly 'alter[ed] the content'" of their speech.[99] Requiring political ads to list their top funding sources is in no way similar to forcing pro-life groups to share information about abortion access. And *NIFLA* did not discuss, much less overrule, the holding of *Citizens United* about political ad disclaimers.

When it comes to political ads, as the Supreme Court has recognized, disclosing donor information prevents entities from "hiding behind dubious and misleading names" like "'Citizens for Better Medicare' (funded by the pharmaceutical industry)" while

---

[95]   *Id.*

[96]   *See* Br. for Appellant 50, *Citizens United*, 558 U.S. 310 (No. 08-205).

[97]   786 F.3d at 1203.

[98]   138 S. Ct. 2361 (2018).

[99]   *Id.* at 2371.

*Smith, et al. v. Helzer, et al.*                                                     Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))                    Page 23 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 23 of 36

trying to influence the outcome of elections.[100] "[T]people in our democracy are entrusted with the responsibility for judging and evaluating the relative merits of conflicting arguments. They may consider, in making their judgment, the source and credibility of the advocate."[101] Knowing who is funding political ads helps voters "make informed decisions and give proper weight to different speakers and messages."[102] Including some of this information in the ads themselves advances this interest more efficiently and effectively than requiring voters to search for disclosure forms online. And the plaintiffs offer no evidence to support their conclusory allegation that the disclaimers will take up a "significant portion of an advertisement." Dkt. 1 at 13.

The First Circuit in *Gaspee Project* affirmed the dismissal of the same claims that the plaintiffs make here in upholding a top-five donor disclaimer, and this Court should follow suit in upholding Alaska's top-three version.[103] The *Gaspee Project* plaintiffs argued that having an on-ad disclaimer "serves no informational interest and is essentially redundant of the disclosure requirement," but the First Circuit disagreed, explaining that "on-ad donor information is a more efficient tool for a member of the public" that "provides an instantaneous heuristic by which to evaluate generic or uninformative speaker names," and that it "may be more effective in generating discourse that facilitates

---

[100]    *McConnell*, 540 U.S. at 196-97 (quoting district court decision).

[101]    *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 994 (9th Cir. 2010) (quoting *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 791-92 (1978)).

[102]    *Citizens United*, 558 U.S. at 371.

[103]    *Gaspee Project*, 13 F.4th at 90-92.

*Smith, et al. v. Helzer, et al.*                                             Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 24 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 24 of 36

the ability of the public to make informed choices in the specialized electoral context."[104] The plaintiffs argued that the disclaimer "furnishes potentially irrelevant information," but the First Circuit explained that "even though the degree of relevancy may vary, the identification of top donors is relevant in all cases."[105] The plaintiffs argued that the disclaimer "might mislead a viewer either as to the makeup of a speaker's contributor base or as to a donor's endorsement of the message," or "elicit threats or harassment," but the First Circuit noted that "the on-ad donor disclaimer is subject to the same off-ramps that apply to the disclosure requirement" and that an entity "could, of course, raise any concerns particular to its circumstances by means of an as-applied challenge."[106]

Similarly here, as explained above, donors and entities making independent expenditures can avoid the need to disclose donations that they do not intend to go towards independent expenditures (and the corresponding need to include those donors' names in disclaimers) by making their intentions clear to each other and segregating funds meant for other purposes.[107] Likewise, they can challenge the disclaimer law as applied to their specific circumstances if problematic applications of the statute arise in practice.[108] But a facial challenge to the law requires showing that a "substantial number

---

[104]     *Id*. at 91.

[105]     *Id*.

[106]     *Id*. at 92.

[107]     *See supra* pg. 17.

[108]     *Cf. Yes on Prop B v. City & Cty. of San Francisco*, 440 F. Supp. 3d 1049, 1056 (N.D. Cal.), *appeal dismissed as moot*, 826 F. App'x 648 (9th Cir. 2020) (considering an as-applied challenge to a disclaimer requirement, and noting that "[t]he burden imposed

*Smith, et al. v. Helzer, et al.*                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 25 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 25 of 36

of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep,"[109] and these plaintiffs do not come close to stating a claim to support such a finding.

### III. The out-of-state disclaimer requirement does not compel speech in violation of the First Amendment (Count II).

Count II of the complaint also challenges Ballot Measure 2's provision requiring disclaimers from entities receiving most of their funds from outside Alaska.[110] Dkt. 1 at 12-13. The plaintiffs' claim here rests on their mistaken premise that this disclaimer unduly discriminates against the First Amendment rights of nonresidents. Dkt. 1 at 12. But it does is not. And like the top-donor disclaimer, it is narrowly tailored to the important state interest in informing voters.

The same "exacting scrutiny" standard applies to the out-of-state disclaimer as to the top-donor disclaimer, and *Citizens United* does not, as the plaintiffs suggest, support applying strict scrutiny. Dkt. 1 at 12. *Citizens United* applied strict scrutiny to a *ban* on speech by corporations, but it applied exacting scrutiny to disclosure and disclaimer laws because they "do not prevent anyone from speaking."[111] Likewise here, strict scrutiny would apply if the State *banned* speech by out-of-state funded entities, but it does not apply to disclaimer laws that do not prevent them from speaking.

---

by a given disclaimer will vary depending on the type of disclaimer, relevant advertisement, and various other case-specific factors").

[109]     *Americans for Prosperity*, 141 S. Ct. at 2387.

[110]     *See* AS 15.13.090(g).

[111]     558 U.S. at 366 (quoting *McConnell*, 540 U.S. at 201).

*Smith, et al. v. Helzer, et al.*                                        Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 26 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 26 of 36

The plaintiffs' reliance on *Thompson v. Hebdon* is similarly irrelevant because that case invalidated an out-of-state campaign contribution restriction and because Alaska no longer has any such restrictions.[112] Dkt. 1 at 12. Contributions limits, which were at issue in *Thompson*, must be justified by the interest in preventing quid pro quo corruption.[113] *Thompson* concluded that this interest did not justify aggregate limits on nonresident contributions,[114] but that does not matter here because the State is neither limiting nonresident contributions nor seeking to justify the out-of-state disclaimer as a means of preventing quid pro quo corruption.

Instead, the interest justifying the out-of-state disclaimer is the first important state interest discussed above: having an informed electorate. By passing Ballot Measure 2, Alaska voters decided they want to know when a communication is coming from an entity funded mostly from outside Alaska. This information can help voters from being misled when an entity uses a name—like "Families of the Last Frontier"—that implies otherwise. *See* Dkt. 1 at 8.

The plaintiffs have failed to state a claim under Count II and the Court should grant the motion to dismiss.

## IV. The "dark money" disclosure requirements do not violate the First Amendment (Count III).

Count III challenges the requirement that disclosures include the "true source" of

---

[112]    *See Thompson v. Hebdon*, 909 F.3d 1027, 1040-43 (9th Cir. 2018), *judgment vacated on other grounds*, 140 S. Ct. 348 (2019).

[113]    *Id*. at 1043 ("Campaign contribution limits rise or fall on whether they target quid pro quo corruption or its appearance.").

[114]    *Id.*

*Smith, et al. v. Helzer, et al.*                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 27 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 27 of 36

the money used for independent expenditures in Alaska.[115] Dkt. 1 at 13-14. The "true

source" is defined as the "person or legal entity whose contribution is funded from

wages, investment income, inheritance, or revenue generated from selling goods or

services," and includes an entity that got the funds through "contributions, donations,

dues, or gifts" only if those were "less than $2,000 per person per year."[116]

This "true source" rule responds to the reality that disclosures have limited value if

they reveal only that the funding for independent expenditures came to the spender from

an intermediary entity with an opaque or misleading name like "Citizens for a Better

Alaska."[117] If the state interest in informing voters justifies disclosure of the funding

behind independent expenditures—which, as discussed above, it does—it also justifies

measures necessary to make that disclosure meaningful.[118] As explained above, shining a

light on sources of spending not only helps voters, but also deters corruption. The public

---

[115]    *See* AS 15.13.040 & AS 15.13.110(k) (requiring reporting of "true source").

[116]    *See* AS 15.13.400(19) (defining "true source").

[117]    *Cf. McConnell*, 540 U.S. at 128 n.23 ("[E]xamples of mysterious groups included
'Voters for Campaign Truth,' 'Aretino Industries,' 'Montanans for Common Sense
Mining Laws,' 'American Seniors, Inc.,' 'American Family Voices,' and the 'Coalition
to Make our Voices Heard'") (internal citation omitted).

[118]    *See Vt. Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 138 (2d. Cir. 2014)
("[Donor] disclosure requirements simply address[] the situation where, for example, a
corporation creates an entity with an opaque name—say 'Americans for Responsible
Solutions'—contributes money to that entity, and has that entity engage in speech on its
behalf. By requiring that entity to meet reporting and organizational requirements,
Vermont can ensure that the underlying speaker is revealed."); *Nat'l Org. for Marriage v.
McKee*, 649 F.3d 34, 58 (1st Cir. 2011) (concluding that donor disclosure requirements
were narrowly tailored in that they "require[ed] disclosure only of . . . identifying
information for any contributors who have given more than $50 to the PAC to support or
oppose a candidate or campaign").

*Smith, et al. v. Helzer, et al.*                                         Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))            Page 28 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 28 of 36

and regulators cannot be assured that independent expenditures involve no corruption or foreign interference if they do not even know who is doing what.

The "true source" rule operates when a donor contributes $2,000 or more to a recipient that makes independent expenditures. Because both participants in this large transaction will have to report the true source of the funds, the recipient should ask for (and the donor should provide) this information. If the donor is an individual or business with normal sources of income like wages, investments, or business profits, the donor can likely report itself as the true source (assuming the sums donated do not exceed normal income). And if the donor is an entity that has no normal sources of income—getting money only through gifts, dues, and donations—it can still report itself as the true source as long as it is just passing on money that it received in increments of under $2,000.[119]

It is only when neither of these things is true—i.e., when the donor has no normal sources of income to account for the funds and is passing on money that it received in increments over $2,000—that the donor is considered an "intermediary" and so-called "secondary donor disclosure" is required.[120] That is, if this intermediary donor wants its money to go towards independent expenditures, it has to report where it got the money, which is something it should know. Only if its source was *also* an intermediary—that is,

---

[119]    *See* AS 15.13.400(19) ("[T]o the extent a membership organization receives dues or contributions of less than $2,000 per person per year, the organization itself shall be considered the true source."). Although this exception applies only to a "membership organization," this term is not defined, so any entity that amasses contributions of under $2,000 could likely qualify.

[120]    *See* AS 15.13.400(19) (stating that "a person or legal entity who derived funds via contributions, donations, dues, or gifts is not the true source, but rather an intermediary for the true source").

*Smith, et al. v. Helzer, et al.*                                              Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 29 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 29 of 36

an entity with no normal income passing on money received in increments over $2,000—
would further disclosure be needed, requiring slightly more work. In such a situation, the
intermediary donor would have to ask the prior intermediary about the source of the
funds to comply with reporting. But this is precisely the situation where further disclosure
is necessary to provide useful information, because just knowing that "Alaskans for
Jones" received its funds from "Citizens for a Better Alaska" sheds very little light on
who is trying to influence elections.

The plaintiffs allege that prohibiting "dark money" violates their right to "private
association." Dkt. 1 at 13-14. Their argument boils down to a claim that they have a
constitutional right to engage in political speech anonymously. Importantly, this rule does
not prevent solicitation or donation, not does it prohibit anonymous speech. It just
requires donors and recipients to be clear with each other about their intentions and to
reveal the sources of money going towards independent expenditures. If a donor or
intermediary is unwilling or unable to disclose the true source of funds, that does not
mean they cannot pass on those funds—it simply means those funds cannot go towards
independent expenditures. The donor can remain anonymous (or refuse to disclose its
true sources), and the recipient can place the funds in an account that will not be used for
independent expenditures. In other words, the rule just means that money going towards
independent expenditures cannot be masked by intermediaries. Although this is a
restriction, any effective disclosure could be easily avoided without it.

The plaintiffs' challenge is a facial one. They do not allege that this rule requires
disclosure of donations unrelated to electoral spending, and their own activities are

*Smith, et al. v. Helzer, et al.*                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 30 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 30 of 36

avowedly political.[121] None of them profess to be "innocent third parties" who will be inadvertently subject to disclosure despite a lack of any desire to influence elections. Their challenge to the true source rule thus amounts to the assertion that they have a constitutional right to use intermediaries to mask political funding sources and avoid effective disclosure. But if there were a constitutional right to avoid disclosing political spending, the Supreme Court would not have upheld disclosure laws for decades.[122]

The plaintiffs cannot succeed by invoking the imagined circumstances of other hypothetical donors like a church or chamber of commerce. Dkt. 1 at 14. They lack standing (and have offered no relevant allegations) to raise as-applied challenges on behalf of other donors and Courts "decline to 'speculate about "hypothetical" or "imaginary" cases.'"[123] Their case is a facial challenge, which requires them to show that a "substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."[124] Their own political activities fall squarely within the statute's plainly legitimate sweep, and they fail to offer any other allegation that is sufficient to state a cognizable claim.

---

[121]   The individual plaintiffs have "donate[d] amounts in excess of $2,000 to organizations that engage in independent expenditures" and worry that they "will be subject to the disclosure requirements of Ballot Measure 2." *See* Dkt. 1 at 2-3, 5-7. The organizational plaintiffs are independent expenditure groups. *See* Dkt. 1 at 3.

[122]   *See Buckley*, 424 U.S. at 75-76; *McConnell*, 540 U.S. at 196-98; *Citizens United*, 558 U.S. at 368-71.

[123]   *Yamada*, 786 F.3d at 1201.

[124]   *Americans for Prosperity*, 141 S. Ct. at 2387.

*Smith, et al. v. Helzer, et al.*                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))              Page 31 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 31 of 36

In any event, even if the Court were to consider the plaintiffs' suggestion that Ballot Measure 2 goes too far because churches also donate to independent expenditure entities, this allegation is not enough to provide a plausible claim. For example, if a church were to donate over $2,000 to an independent expenditure group, it would have at least two options to avoid disclosing all of its members who give over $2,000 annually. First, a church likely has substantial funds that came from donations under $2,000, so if the sum donated did not exceed the church's income in this regard, the church could disclose itself as the "true source."[125] Second, the church could refuse to provide the true source, thereby letting the independent expenditure group know that the money must be used for purposes other than independent expenditures in candidate elections. Indeed, churches and nonprofits are accustomed to being careful with their money to preserve their federal tax-exempt status, and they could easily make their intentions clear to one another to facilitate a large donation. The church would only have to disclose donors over $2,000 if it *wanted* their money to go towards independent expenditures in candidate elections—in which case disclosure would be entirely appropriate.[126] The church and its large donors could avoid any unwanted disclosures by similarly making their intentions clear to one another, so that the church knows what uses of their money they are comfortable with.

---

[125]    *See* AS 15.13.400(19).

[126]    Depending on the church's tax status and the details of the situation, a political donation like this could put its tax-exempt status at risk. *See* 26 U.S.C. 501(c)(3) (providing tax-exempt status for a religious organization that "does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office").

*Smith, et al. v. Helzer, et al.*                                                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 32 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 32 of 36

Similarly, the plaintiffs' bare assertion that non-profit groups would be surprised (or burdened) to find their name on a disclosure when their contribution resulted in an independent expenditure does not present a cognizable claim and should be dismissed. *See* Dkt. 1 at 14. If, for example, the Chamber of Commerce were to hold a luncheon to solicit contributions for its independent expenditure account, it should (and likely would) tell donors that this is where their contributions would go (along with asking for true source information).[127]

Of course, if any of the plaintiffs' budding hypotheticals were to become reality, the people involved could ask APOC for an advisory opinion on their situation[128] and—if they did not like the answer—bring an as-applied challenge in which concrete circumstances would give the Court a clearer idea of how the law operates. Facial challenges are "disfavored" because they "often rest on speculation," risk "premature interpretation of statutes on the basis of factually barebones records," and "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied."[129] Even if the disclosure rules were to reveal that a large donor's funds were

---

[127] Indeed, some entities are legally required to be clear with their donors in this way. *See* AS 15.13.074(i) ("A nongroup entity may not solicit or accept a contribution to be used for the purpose of influencing the outcome of an election unless the potential contributor is notified that the contribution may be used for that purpose.").

[128] *See* AS 15.13.374 (providing that "[a]ny person" can request an advisory opinion).

[129] *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (cleaned up).

*Smith, et al. v. Helzer, et al.*                                        Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 33 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 33 of 36

routed through intermediaries into causes they may have no interest in at all, and even causes they oppose, that disclosure would not necessarily be a constitutional problem. Such a donor might want to know that her donation came to this unintended fate. And such a disclosure might shed light on organizational fraud or mismanagement—or at least, give the public true information about how donor funds are funneled into independent expenditures. Bare assertions about this abstract scenario are insufficient to state a claim.

The Court should thus dismiss Count III of the plaintiffs' complaint.

## V. The plaintiffs have failed to state an as-applied challenge based on fears of retaliation.

Although the Supreme Court has "left open the possibility of as-applied challenges to disclosure and disclaimer requirements if a threat of retaliation looms," the plaintiffs pursue only a facial challenge and have failed to allege a "reasonable probability" of "threats, harassment, or reprisals."[130]

In *Buckley*, the Supreme Court "found no evidence that any party had been exposed to economic reprisals or physical threats as a result of the compelled disclosure," in contrast with a prior case involving disclosure of NAACP membership lists in 1950s Alabama.[131] Likewise in *Citizens United*, although some amici had "point[ed] to recent events in which donors to certain causes were blacklisted, threatened, or otherwise targeted for retaliation," the plaintiff "offered no evidence that its members may face

---

[130]    *Gaspee Project*, 13 F.4th at 92.

[131]    *McConnell*, 540 U.S. at 198.

*Smith, et al. v. Helzer, et al.*                                                      Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))                          Page 34 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 34 of 36

similar threats or reprisals."[132] And in *John Doe No. 1 v. Reed*, the Court acknowledged that disclosure of names on "controversial" ballot measure petitions might subject signatories to threats, but rejected a facial challenge because "only modest burdens attend[ed] the disclosure of a typical petition."[133]

The plaintiffs here have done nothing more than allege a general fear of "cancel culture." Dkt. 1 at 7, 9-10. As Justice Scalia wrote in his *John Doe No. 1* concurrence, "harsh criticism, short of unlawful action, is a price our people have traditionally been willing to pay for self-governance. Requiring people to stand up in public for their political acts fosters civic courage, without which democracy is doomed."[134] Moreover, as the plaintiffs acknowledge when they complain that Ballot Measure 2's disclosure requirements are duplicative, to the extent they directly donate to independent expenditure entities, those entities are already required to disclose their information.[135] The plaintiffs do not challenge those provisions, undermining any allegation of reprisal or "cancel culture." The plaintiffs' complaint thus fails to state a claim and should be dismissed.

## CONCLUSION

The State defendants respectfully request that the Court dismiss the plaintiffs' complaint.

---

[132]    558 U.S. at 370.

[133]    561 U.S. 186, 201-02 (2010).

[134]    *John Doe No. 1*, 561 U.S. at 228 (Scalia, J., concurring).

[135]    AS 15.13.040(d)-(e); AS 15.13.110(k).

*Smith, et al. v. Helzer, et al.*                                               Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 35 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 35 of 36

DATED: May 16, 2022.

TREG R. TAYLOR
ATTORNEY GENERAL

By:     /s/ Jessica M. Alloway
        Jessica M. Alloway (AK Bar No. 1205045)
        Kimberly D. Rodgers (AK Bar No. 0605024)
        Assistant Attorneys General
        Office of the Attorney General
        Opinions, Appeals & Ethics Section
        1031 West Fourth Avenue, Ste. 200
        Anchorage, AK 99501
        jessie.alloway@alaska.gov
        kimber.rodgers@alaska.gov
        Phone:  (907) 269-6612
        Facsimile:  (907) 269-3697

        *Attorneys for Defendants*

**Certificate of Service**

I certify that on May 16, 2022 the foregoing **State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))** was served electronically on:

Craig W. Richards
Law Offices of Craig Richards
Anchorage, AK  99501
crichards@alaskaprofessionalservices.com

Scott M. Kendall
Cashion Gilmore & Lindemuth
Anchorage, AK  99501
scott@cashiongilmore.com

Daniel R. Suhr
Liberty Justice Center
Chicago, IL  60603
dsuhr@libertyjusticecenter.org

Jahna M. Lindemuth
Cashion Gilmore & Lindemuth
Anchorage, AK  99501
jahna@cashiongilmore.com

Reilly Stephens
Liberty Justice Center
Chicago, IL  60603
rstephens@libertyjusticecenter.org

Samuel G. Gottstein
Cashion Gilmore & Lindemuth
Anchorage, AK  99501
sam@cashiongilmore.com

/s/ Jessica M. Alloway
Jessica M. Alloway
Assistant Attorney General

*Smith, et al. v. Helzer, et al.*                    Case No. 3:22-cv-00077-SLG
State Defendants' Motion to Dismiss (Fed. R. Civ. P. 12(b)(6))          Page 36 of 36

Case 3:22-cv-00077-SLG   Document 31   Filed 05/16/22   Page 36 of 36