Craig W. Richards (AK No. 0205017)
Law Offices of Craig Richards
810 N Street, Ste. 100
Anchorage, Alaska 99501
Email: crichards@alaskaprofessionalservices.com

Daniel R. Suhr *
Reilly Stephens *
Liberty Justice Center
Chicago, Illinois 60603
Ph.: 312-263-7668
Email: dsuhr@libertyjusticecenter.org
    rstephens@libertyjusticecenter.org

*Counsel for All Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **Doug Smith, Robert Griffin, Allen Vezey, Albert Haynes, Trevor Shaw, Families of the Last Frontier**, and **Alaska Free Market Coalition**, <br><br> Plaintiffs, <br><br> v. <br><br>_____ <br><br> **Anne Helzer**, in her official capacity as chair of the Alaska Public Offices Commission, and **Van Lawrence**, **Richard Stillie Jr**., **Suzanne Hancock**, and **Dan LaSota**, in their official capacities as members of the Alaska Public Offices Commissions, <br><br> Defendants. | Case No. 3:22-cv-00077-SLG <br><br><br> FIRST AMEDNED COMPLAINT |

# INTRODUCTION[1]

1. The U.S. Constitution protects the rights of free speech and free association.

2. Ballot Measure 2, the ballot initiative with a number of election-related reforms, invades Alaskans' fundamental constitutional rights.

3. Defendants are responsible for implementing Ballot Measure 2's reforms to the electoral and campaign finance systems of the State of Alaska.

4. In order to vindicate the constitutional rights of themselves and their members, Plaintiffs bring this suit seeking declaratory and injunctive relief to protect the core First Amendment rights to free speech and association.

# PARTIES

5. Plaintiff Doug Smith is a citizen of Anchorage, Alaska. He sometimes donates amounts in excess of $2,000 to organizations that engage in independent expenditures.

6. Plaintiff Robert Griffin is a citizen of Anchorage, Alaska. He sometimes donates amounts in excess of $2,000 to organizations that engage in independent expenditures.

---

[1] This First Amended Complaint is filed pursuant to Fed. R. Civ. Pro. 15(a)(1)(B).

7.     Plaintiff Allen Vezey is a citizen of Fairbanks, Alaska. He sometimes donates amounts in excess of $2,000 to organizations that engage in independent expenditures.

8.     Albert Haynes is a citizen of Wasilla, Alaska. He sometimes donates amounts in excess of $2,000 to organizations that engage in independent expenditures.

9.     Trevor Shaw is a citizen of Ketchikan, Alaska. He sometimes donates amounts in excess of $2,000 to organizations that engage in independent expenditures.

10.    Families of the Last Frontier is an independent expenditure group registered and operating in the state of Alaska, that has received donations in excess of $2,000 in the past, has made independent expenditures in excess of $2,000 in the past, and intends to continue doing so in the future. Families of the Last Frontier also solicits donations from outside the state of Alaska, and at times these donations have been in excess of 50% of their revenue.

11.    Alaska Free Market Coalition is an independent expenditure group registered and operating in the state of Alaska, that has received donations in excess of $2,000 in the past, has made independent expenditures in excess of $2,000 in the past, and intends to continue doing so in the future.

12.    Anne Helzer is the chair of the Alaska Public Offices Commission, and Van Lawrence, Richard Stillie Jr., Suzanne Hancock, and Dan LaSota are the members of the Commission. They live across the state, but the Commission's offices are in Juneau, Alaska. They are sued in their official capacities.

## JURISDICTION AND VENUE

13.    This case raises claims under the First and Fourteenth Amendments of the United State Constitution and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

14.    Venue is appropriate under 28 U.S.C. § 1391(b)(1) and (2) because Defendants are located in and a substantial portion of the events giving rise to the claims occurred in the District of Alaska.

## FACTUAL ALLEGATIONS

15.    In November 2020, the people of Alaska adopted Ballot Measure 2, a complete copy of which was attached to the original complaint as Exhibit A.

16.    On November 30, 2020, the Lieutenant Governor certified the results of the vote on Ballot Measure 2.

17.    Pursuant to Alaska Const. Art. XI, Sec. 6, the Measure automatically became law 90 days after certification, which was Sunday, February 28, 2021.

18.    The Alaska Public Offices Commission (APOC) adopted regulations implementing Ballot Measure 2 on Wednesday, June 9, 2021.

4

19.     The Alaska Supreme Court issued an order upholding the entirety of Ballot Measure 2 against several state constitutional challenges on January 19, 2022.

20.     There will be a primary and general election in fall 2022 to elect the Governor and Lieutenant Governor of Alaska, among other offices. The primary will be held on August 16, 2022, and the general on November 8, 2022.

21.     Defendant members of the Commission post donor reports on the agency's website, so anyone can see donors' name, home address, and occupation: https://doa.alaska.gov/apoc/SearchReports/.

22.     Plaintiff Smith has donated to independent expenditure group and candidates in past elections, including approximately $1,600 in donations in 2018, $5,000 in 2019, and $3,000 in 2020.

23.     Smith would like to continue giving similar or even greater amounts to support causes he is passionate about, but if he does so he will now be subject to the requirements of Ballot Measure 2.

24.     Plaintiff Griffin has donated to independent expenditure group and candidates in past elections, including approximately $14,500 in donations in 2018, $4,500 in 2019, and $2,750 in 2020.

25.     Griffin would like to continue giving similar or even greater amounts to support causes he is passionate about, but if he does so he will now be subject to the requirements of Ballot Measure 2.

26.     Plaintiff Vezey has donated to independent expenditure group and candidates in past elections, including approximately $2,400 in donations in 2018 and $2,250 in 2020.

27.     Vezey would like to continue giving similar or even greater amounts to support causes he is passionate about, but if he does so he will now be subject to the requirements of Ballot Measure 2.

28.     Plaintiff Haynes has donated to independent expenditure group and candidates in past elections, including a $5,000 donation to an independent expenditure group during the 2018 election cycle.

29.     Haynes would like to continue giving similar or even greater amounts to support causes he is passionate about, but if he does so he will now be subject to the requirements of Ballot Measure 2.

30.     Plaintiff Shaw has donated to independent expenditure group and candidates in past elections, including approximately $6,646 in donations in 2018, $4,647 in 2019, and $6,850 in 2020. These donations included a mix of cash and in-kind contributions.

6

31.     Shaw would like to continue giving similar or even greater amounts to support causes he is passionate about, but if he does so he will now be subject to the requirements of Ballot Measure 2.

32.     Plaintiffs Smith, Griffin, Haynes, Vezey, and Shaw (the Donor Plaintiffs) also donate to the general funds of charitable, religious, business, community, and philanthropic organizations whose donations are not disclosed. Those organizations may without their knowledge or consent use general fund dollars to support other organizations which may, at that level or some future level, support an independent expenditure.

33.     The Donor Plaintiffs believe strongly in the right of free and private association, and therefore the compelled disclosures required by Ballot Measure 2 would be in conflict with their principles.

34.     Donor Plaintiffs fear that public disclosure of their support of their preferred causes as required by Ballot Measure 2 may lead to reprisals against them and their business interests in the current climate of cancel culture.

35.     The burdensome additional requirements such as 24-hour disclosure added by Ballot Measure 2 are a serious and compelling disincentive for the Donor Plaintiffs to continue giving as they have in the past.

7

36.     The Donor Plaintiffs are active and busy people with a variety of obligations on their time such that immediate reporting of their political donations is not always practical.

37.     Donor Plaintiffs are civically active citizens, not sophisticated political professionals intimately familiar with the compliance rules of APOC.

38.     Because of Ballot Measure 2, the Donor Plaintiffs will be forced to either forgo giving to causes they believe in, or do so subject to a disclosure and reporting regime that they believe violates their rights.

39.     Plaintiff Families of the Last Frontier (FLF) is a private independent expenditure group registered and operating in Alaska.

40.     FLF has raised and spent more than $2,000 on independent expenditures in previous Alaska elections, and would like to do so for the 2022 election cycle as well.

41.     FLF would like to raise and spend more than $2,000 on independent expenditures for the 2022 election cycle and other future election cycles, but doing so would subject it to the requirements of Ballot Measure 2.

42.     FLF receives donations of more than $2,000 from some of its donors, and would like to continue soliciting such donations in the future.

43.     If FLF receives donations of more than $2,000 from a given donor going forward, those donations will be subject to the disclosure requirements of Ballot Measure 2.

44.     FLF will have a harder time raising money from organizational donors if they must comply with the "true source" disclosure rule.

45.     FLF solicits funds from both within and outside the State of Alaska, and in the past donations from outside the Alaska have accounted for more than 50% of FLF's total revenue.

46.     Under Ballot Measure 2, if FLF again secures a majority of funding from sources outside Alaska, it will be subject to the out-of-state disclosure requirements of Ballot Measure 2.

47.     FLF believes strongly in the rights of free association and free speech and the compelled disclosures and disclaimers required by Ballot Measure 2 would be in conflict with the principles of the organization.

48.     FLF has received money from a variety of sources over the years. Listing FLF's top three donors in their communications would represent an arbitrary sample that is not representative of the individuals and entities that support their work.

49.     FLF fears that publicity listing our donors support of the organization may lead to reprisals against donors and their business interests in the current climate of cancel culture.

50.     The burdensome additional requirements added by Ballot Measure 2 are a serious and compelling disincentive for potential donors to FLF.

51.     Because of Ballot Measure 2, many donors will be forced to either forgo giving to FLF, or do so subject to a disclosure and reporting regime that they believe violates their rights.

52.     Plaintiff Alaska Free Market Coalition (AFMC) is a private independent expenditure group registered and operating in Alaska.

53.     AFMC has raised and spent more than $2,000 on independent expenditures in previous Alaska elections, and would like to do so for the 2022 election cycle as well.

54.     AFMC would like to raise and spend more than $2,000 on independent expenditures for the 2022 election cycle and other future election cycles, but doing so would subject it to the requirements of Ballot Measure 2.

55.     AFMC receives donations of more than $2,000 from some of its donors, and would like to continue soliciting such donations in the future.

10

56.     If AFMC receives donations of more than $2,000 from a given donor going forward, those donations will be subject to the disclosure requirements of Ballot Measure 2.

57.     Under Ballot Measure 2, if AFMC secures a majority of funding from sources outside Alaska, it will be subject to the out-of-state disclosure requirements of Ballot Measure 2.

58.     AFMC believes strongly in the rights of free association and free speech and the compelled disclosures and disclaimers required by Ballot Measure 2 would be in conflict with the principles of the organization.

59.     AFMC has received money from a variety of sources over the years. Listing AFMC's top three donors in their communications would represent an arbitrary sample that is not representative of the individuals and entities that support their work.

60.     AFMC fears that publicity listing our donors support of the organization may lead to reprisals against donors and their business interests in the current climate of cancel culture.

61.     AFMC will have a harder time raising money from organizations if they must comply with the "true source" disclosure requirement.

62.     The burdensome additional requirements added by Ballot Measure 2 are a serious and compelling disincentive for potential donors to AFMC.

11

63.     Because of Ballot Measure 2, many donors will be forced to either forgo giving to AFMC, or do so subject to a disclosure and reporting regime that they believe violates their rights.

64.     Under the terms of Ballot Measure 2, FLF would have had to include the following message in every radio ad during the 2020 election year, based on the reports they submitted to APOC that year: "Paid for by Families of the Last Frontier. This notice to voters is required by Alaska law. We certify that this advertisement is not authorized, paid for, or approved by any candidate. The top contributors of Families of the Last Frontier are GOPAC, ABC Alaska PAC, and Arctic E&P Advisors." AS 15.13.090(a) & (d) and AS 15.13.135(b)(2).

65.     Reading the full statement above would easily take up more than 20% of any radio ad. *American Beverage Association v. City & County of San Francisco*, 916 F.3d 749 (9th Cir. 2019).

66.     At a rate of two words per-second, this 50-word statement would take up 41% of a 60-second radio ad, and 83% of a 30-second radio ad.  Nor can plaintiffs reduce that intrusion by reading the disclaimer quickly or briskly: "the . . . statements must be read in a manner that is easily heard." AS 15.13.090(d).

67.      In a television ad, the FLF message must include a video statement: "I am Steve Strait, president of Families of the Last Frontier, and I approved this message." AS 15.13.090(a)(2)(B). On the screen there must be text which, for the

2020 election year, would have read: "Paid for by Families of the Last Frontier, 645 G Street Ste 100 PMB 1071, Anchorage, Alaska 99501. This notice to voters is required by Alaska law. We certify that this advertisement is not authorized, paid for, or approved by any candidate. The top contributors of Families of the Last Frontier are GOPAC of Arlington, Virginia, ABC Alaska PAC of Anchorage, Alaska, and Arctic E&P Advisors of Anchorage, Alaska. A MAJORITY OF CONTRIBUTIONS TO FAMILIES OF THE LAST FRONTIER CAME FROM OUTSIDE THE STATE OF ALASKA." AS 15.13.090(a), (c), & (g) and AS 15.13.135(b)(2).

68.     The 86-word statement above must be displayed in a manner that is "easily discernible" and must "remain onscreen throughout the entirety of the communication." AS 15.13.090(c) & (g).

69.     GOPAC is a federal election entity that must already disclose its donors. ABC Alaska PAC is a state election entity that must already disclose its donors.

70.     Under the terms of Ballot Measure 2, AFMC would have had to include the following message in every radio ad during the 2018 election year, based on the reports they submitted to APOC that year: "Paid for by Alaska Free Market Coalition. This notice to voters is required by Alaska law. We certify that this advertisement is not authorized, paid for, or approved by any candidate. The

13

top contributor to Alaska Free Market Coalition is Connect Solutions LLC." AS 15.13.090(a) & (d) and AS 15.13.135(b)(2).

71.    Reading the full statement above would easily take up more than 20% of any radio ad. *American Beverage Association v. City & County of San Francisco*, 916 F.3d 749 (9th Cir. 2019).

72.    At a rate of two words per-second, this 43-word statement would take up 36% of a 60-second radio ad, and 72% of a 30-second radio ad.  Nor can plaintiffs reduce that intrusion by reading the disclaimer quickly or briskly: "the . . . statements must be read in a manner that is easily heard." AS 15.13.090(d).

73.    In a television ad, the AFMC message must include a video statement: "I am Trevor Shaw, Co-Chair and Treasurer of the Alaska Free Market Coalition, and I approved this message." AS 15.13.090(a)(2)(B). On the screen there must be text which, for the 2018 election year, would have read: "Paid for by Alaska Free Market Coalition, PO Box 1512, Ward Cove, Alaska 99928. This notice to voters is required by Alaska law. We certify that this advertisement is not authorized, paid for, or approved by any candidate. The top contributor to Alaska Free Market Coalition is Connect Solutions LLC of Ketchikan, Alaska." AS 15.13.090(a), (c), & (g) and AS 15.13.135(b)(2).

74.     The 53-word statement above must be displayed in a manner that is "easily discernible" and must "remain onscreen throughout the entirety of the communication." AS 15.13.090(c) & (g).

75.     Neither the statute nor APOC's proposed regulations[2] define what sort of text would be "easily discernable."

76.     In interpreting similar provisions of federal law, the Federal Election Commission requires that to be sufficiently readable a disclaimer take up at least four percent of the vertical picture height for a period of at least four seconds, as long as there is sufficient color contrast between the text and the background. 11 CFR 110.11(c)(3)(iii).

77.     However, the federal disclaimer is much shorter. The FEC's example for an independent expenditure is only 18 words long: "Paid for by the Court Jesters Union PAC (www.jesterspac.net) and not authorized by any candidate or candidate's committee."[3]

78.     For FLF's 86-word disclaimer, nearly five times the size of the federal 18-word disclaimer, to appear at an on-screen size equivalent to the FEC's 4% safe harbor, it would occupy approximately 19% of the screen. For AFMC's 53-word disclaimer, it would occupy approximately 12% of the screen. And unlike the

---

[2] https://doa.alaska.gov/apoc/pdf/ProposedRegulations.pdf
[3] https://www.fec.gov/help-candidates-and-committees/advertising-and-disclaimers/

15

federal four-second disclaimer, here Plaintiffs must surrender that much of their message for the entirety of the ad. And this is on top of the audible portion of the ad that Plaintiffs must also surrender for 16 and 18 words, respectively.

79.    Federal law also provides that printed disclaims are eligible for a safe harbor where they are in at least 12-point font on advertising material no more than twenty-four inches by thirty-six inches, and where there is sufficient color contrast between the test and the background. 11 CFR 110.11(c)(2).

80.    Under APOC's proposed regulations,[4] disclaimers must be included on all print materials that measure 3.5 inches by 5 inches or more. Neither the statute nor the proposed regulations specify the size of the text.

81.    Using 12-pt Times New Roman font, single spaced, FLF's disclaimer would take up approximately 1.5 inches of the 3.5 inches of vertical space on a print advertisement, or 33% of the ad.

82.    Using 12-pt Times New Roman font, single spaced, AFMC's disclaimer would take up approximately 1 inch of the 3.5 inches of vertical space on a print advertisement, or 29% of the ad.

83.    FLF and AFMC have in the past and will in the future use television ads, radio ads, and/or printed materials to share their views with Alaska voters.

84.    Plaintiffs have no remedy at law.

_____

[4] https://doa.alaska.gov/apoc/pdf/ProposedRegulations.pdf

## COUNT I

**Compelling individual donors to report donations to
independent expenditures violates the First Amendment.**

85.     The allegations contained in all preceding paragraphs are incorporated

herein by reference.

86.     Vague, indeterminate, and overly complex campaign finance laws that

burden everyday people with compliance headaches for supporting political and

issue entities violate their First Amendment rights. *Citizens United v. FEC*, 558

U.S. 310, 324 (2010) ("The First Amendment does not permit laws that force

speakers to retain a campaign finance attorney, conduct demographic marketing

research, or seek declaratory rulings before discussing the most salient political

issues of our day.").

87.     Repetitive campaign finance laws that duplicate existing disclosure

requirements are overly burdensome and unjustifiable. *See McCutcheon v. FEC*,

572 U.S. 185, 221 (2014) ("This 'prophylaxis-upon-prophylaxis approach' requires

that we be particularly diligent in scrutinizing the law's fit.").

88.     Sections 7 and 15 of Ballot Measure 2 are unconstitutional because

they compel individual independent expenditure donors to report donations within

24 hours to Defendants when the recipient organizations must also report them.

89.     This requirement could have been more narrowly tailored by excusing

individual donors from the double-reporting requirement. Individual donors must

be the true source of any donation, or they would violate the preexisting statutory prohibition on straw donations. Having individual donors certify they are not straw donors is a meaningless measure that adds no value given the corresponding burden.

90.    This requirement could have been more narrowly tailored by excusing intermediate organizations that already report their donations to APOC or a federal election entity from also making a report to APOC. Many donor or intermediate organizations, such as GOPAC and ABC Alaska PAC, already report their donors, and forcing them to also file true source reports with APOC adds additional compliance burdens with little to no additional information for the public.

91.    They are further unconstitutional because they require donors to report donations to groups that are not actively engaged in independent expenditures. Election requirements must be tied with precision to election activity; this requirement of reporting for groups that conducted independent expenditures in the past cycle but are not currently engaged in independent expenditures is not tailored with the requisite precision. Groups that are not actively engaged in campaign activity retain their constitutional right to privacy.

## COUNT II

**Compelling speakers to recite government-imposed scripts
on campaign materials violates the First Amendment.**

18

92.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

93.     Compelling speakers to recite a government-imposed script is subject to strict scrutiny, which these provisions cannot survive.

94.     AS 15.13.090, both before and after its amendment by Sections 11 and 12 of Ballot Measure 2, requires speakers to recite several government-imposed scripts: a stand-by-your-ad disclaimer, a top-3-donor disclaimer, and an out-of-state disclaimer.

95.     Section 12's out-of-state disclaimer requirement also discriminates against the First Amendment rights of nonresidents. *Thompson v. Hebdon*, 7 F.4th 811, 824 (9th Cir. 2021).

96.     These government-imposed content-altering scripts are unconstitutional and cannot be justified by any compelling interest. Nor are they narrowly tailored or the least restrictive means of providing such information. *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018).

97.     The top-3 donor disclaimer is not narrowly tailored given that all of this information is already publicly available instantly on APOC's website.

98.     Even if the individual parts of the statute are not unconstitutional, together they are so unduly burdensome to be unconstitutional because they take

19

up such a significant portion of an advertisement. *See Am. Bev. Ass'n v. City &*
*Cty. of S.F.*, 916 F.3d 749, 756 (9th Cir. 2019).

99.     The entirety of AS 15.13.090, as modified by Sections 11 and 12 of
Ballot Measure 2, is unconstitutional.

## COUNT III

### Compelling primary and secondary donor
### disclosure violates the First Amendment.

100.    The allegations contained in all preceding paragraphs are incorporated
herein by reference.

101.    The freedom of association includes privacy for organizations and
their members and contributors. *NAACP v. Alabama ex rel. Patterson*, 357 U.S.
449 (1958); *Americans for Prosperity Foundation v. Bonta*, ___ U.S. ___ (2021).

102.    Ballot Measure 2 violates this freedom of private association for
donors to organizations that make independent decisions to support independent
expenditure organizations (secondary or "true source" or "dark money" donor
disclosure).

103.    Charitable, philanthropic, religious, and community organizations and
trade associations may choose to support organizations that engage in independent
expenditures as a very small part of their overall organizational budget and
mission. Alternatively, they may support groups that make independent choices to
support independent expenditures, either immediately or at some future layer.

20

104.    Sections 6, 9, 14, and 18 of Ballot Measure 2 are unconstitutional as applied to so-called intermediary donors because they require disclosure of donations to organizations protected by the First Amendment's freedom of private association without a sufficient government interest to overcome their expectation of privacy. The government does not have a sufficient interest to compel disclosure from intermediary donors exercising independent judgment about which causes and candidates to support.

105.    These sections could have been more narrowly tailored by only requiring disclosure of donors who actively participating in determining how these funds are used. *See Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1 (D.C. Cir. 2009).

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

a.      Declare that the speech-compelling provisions of Ballot Measure 2 and A.S. 15.13.090 violate the First Amendment; and

b.      Declare that the provisions of Ballot Measure 2 requiring individual donors to immediately and duplicatively report their donations violate the First Amendment; and

c.      Declare that the provisions of Ballot Measure 2 requiring disclosure of donors to organizations not actively engaged in current independent expenditures violates the First Amendment; and

21

d.　　Declare that the layered donor-disclosure provisions of Ballot

Measure 2 violate the First Amendment; and

　　e.　　Enjoin the administration, application, or enforcement of all

provisions declared unconstitutional; and

　　f.　　Award Plaintiffs their costs and attorneys' fees; and

　　g.　　Award any further relief to which Plaintiffs may be entitled.


Dated: June 6, 2022

Daniel R. Suhr *
Reilly Stephens *
Liberty Justice Center
Chicago, Illinois 60603
Ph.: 312-263-7668
Email: dsuhr@libertyjusticecenter.org
　　rstephens@libertyjusticecenter.org

/s/
Craig W. Richards (AK No. 0205017)
Law Offices of Craig Richards
810 N Street, Ste. 100
Anchorage, Alaska 99501
Email: crichards@alaskaprofessionalservices.com
*Counsel for Plaintiffs*

*pro hac vice