# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

DOUG SMITH, et al.,

        Plaintiffs,

    v.

ANNE HELZER, et al.,

        Defendants,

    and

ALASKANS FOR BETTER
ELECTIONS, INC.,

        Intervenor-
        Defendant.

Case No. 3:22-cv-00077-SLG

## ORDER RE MOTIONS FOR PRELIMINARY INJUNCTION

Before the Court at Docket 18 is Plaintiffs' motion for a preliminary injunction.[1] Defendants responded in opposition at Docket 30,[2] and Intervenor-Defendant Alaskans for Better Elections, Inc. ("ABE"), also responded in

---

[1] Plaintiffs are Doug Smith, Robert Griffin, Allen Vezey, Albert Haynes, Trevor Shaw, Families of the Last Frontier, and Alaska Free Market Coalition. Plaintiffs additionally filed a motion for a preliminary injunction at Docket 7. This order addresses both motions, which involve the same three claims. Also pending before the Court are motions to dismiss filed by Defendants and Intervenor-Defendant Alaskans for Better Elections ("ABE") at Dockets 31 and 33, respectively. ABE incorporated by reference its motion to dismiss into its opposition to the motion for preliminary injunction. *See* Docket 34 at 3.

[2] Defendants are the five members of the Alaska Public Offices Commission who are sued in their official capacities: Commission Chair Anne Helzer and Commission members Van Lawrence, Richard Stillie, Jr., Suzanne Hancock, and Dan LaSota.

opposition at Docket 34. Plaintiffs filed their reply at Docket 39. Oral argument was held in Anchorage, Alaska on June 13, 2022.

## BACKGROUND

On November 3, 2020, Alaskan voters enacted by initiative Ballot Measure 2, entitled "An Act Replacing the Political Party Primary with an Open Primary System and Ranked-Choice General Election, and Requiring Additional Campaign Finance Disclosures" ("the Measure").[3] The Measure officially became law 90 days later on February 28, 2021.[4] On June 9, 2021, the Alaska Public Offices Commission ("APOC") adopted regulations implementing the Measure.[5] In April 2022, Plaintiffs initiated this action and filed a motion for a preliminary injunction seeking to enjoin the enforcement of several provisions of Alaska's campaign finance laws, including certain provisions added by Ballot Measure 2.[6]

The ranked-choice voting provisions of the Measure were challenged in state court and upheld by the Alaska Supreme Court.[7] The present litigation concerns three sets of campaign finance provisions. *First*, the Measure imposes disclosure requirements on donors to organizations that make independent

---

[3] Docket 33-1 at 2, 36–37 (Kendall Aff., Ex. C, "Ballot Language and Legislative Affairs Summary for Ballot Measure 2"). The Ballot Measure is also referred to on the Ballot Measure itself as "Alaska's Better Elections Initiative." *See* Docket 33-1 at 7 (Kendall Aff., Ex. A).

[4] Docket 40 at 4, ¶ 17 (Am. Compl.).

[5] *Id.* at ¶ 18.

[6] Docket 1 (Compl.); Docket 7.

[7] *Kohlhaas v. State*, Case No. S-18210 (Alaska Jan. 19, 2022).

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 2 of 40
Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 2 of 40

expenditures in elections. Pursuant to Section 7 of the Measure, Alaska Statute § 15.13.040 is amended to impose a reporting requirement on "[e]very individual, person, nongroup entity, or group that contributes more than $2,000 in the aggregate in a calendar year to an entity that made one or more independent expenditures in one or more candidate elections";[8] the reporting must be made within 24 hours of the time that the donation was made.[9] In conjunction with Section 7, Section 15 of the Measure amends Alaska Statute § 15.13.390(a) to establish new civil penalties for contributors who fail to comply with Section 7.[10]

---

[8] Although the text of Section 7 purports to add a new subsection (s) to Alaska Statute § 15.13.040, the text of Section 7 is codified under Alaska Statute § 15.13.040(r). Accordingly, the Court refers to subsection (r) throughout this order, except when quoting the text of Ballot Measure 2.

[9] Section 7 reads in full: "(s) Every individual, person, nongroup entity, or group that contributes more than $2,000 in the aggregate in a calendar year to an entity that made one or more independent expenditures in one or more candidate elections in the previous election cycle, that is making one or more independent expenditures in one or more candidate elections in the current election cycle, or that the contributor knows or has reason to know is likely to make independent expenditures in one or more candidate elections in the current election cycle shall report making the contribution or contributions on a form prescribed by the commission not later than 24 hours after the contribution that requires the contributor to report under this subsection is made. The report must include the name, address, principal occupation, and employer of the individual filing the report and the amount of the contribution, as well as the total amount of the contributions made to that entity by that individual, person, nongroup entity, or group during the calendar year. For purposes of this subsection, the reporting contributor is required to report and certify the true sources of the contribution, and intermediaries, if any, as defined by AS 15.13.400(18). This contributor is also required to provide the identity of the true source to the recipient of the contribution simultaneously with providing the contribution itself."

[10] Section 15 adds a new subsection (2) that reads: "A person who, whether as a contributor or intermediary, delays in reporting a contribution as required by AS 15.13.040(s) is subject to a civil penalty of not more than $1,000 a day for each day the delinquency continues as determined by the commission subject to right of appeal to the superior court"; and a new subsection (3) that reads: "A person who, whether as a contributor or intermediary, misreports or fails to disclose the true source of a contribution in violation of AS 15.13.040(s) [Ballot Measure 2, Section 7] or AS 15.13.074(b) is subject to a civil penalty of not more than the amount of the contribution that is the subject of the misreporting or failure to disclose. Upon a showing that the

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 3 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 3 of 40

*Second*, Ballot Measure 2 amends existing statutory financial disclaimer requirements for political communications. Section 11 of the Measure provides that the requisite disclaimers be easily discernable throughout the "entirety" of the "broadcast, cable, satellite, internet or other digital communication."[11] Section 12 of the Measure adds a new subsection to Alaska Statute § 15.13.090 applicable to political communications by print or video that are "paid for by an outside-funded entity," which requires a disclaimer throughout the entirety of the communication stating that "A MAJORITY OF CONTRIBUTIONS TO (OUTSIDE-FUNDED ENTITY'S NAME) CAME FROM OUTSIDE THE STATE OF ALASKA."[12] Prior to the implementation of Ballot Measure 2, political communications were already

violation was intentional, a civil penalty of not more than three times the amount of the contribution in violation may be imposed. These penalties as determined by the commission are subject to right of appeal to the superior court."

[11] Section 11 reads in full: "AS 15.13.090(c) is amended to read: (c) To satisfy the requirements of (a)(1) of this section and, if applicable, (a)(2)(C) of this section, a communication that includes a print or video component must have the following statement or statements placed in the communication so as to be easily discernible, **and in a broadcast, cable, satellite, internet or other digital communication the statement must remain onscreen throughout the entirety of the communication**; the second statement is not required if the person paying for the communication has no contributors or is a political party: This communication was paid for by (person's name and city and state of principal place of business). The top contributors of (person's name) are (the name and city and state of residence or principal place of business, as applicable, of the largest contributors to the person under AS 15.13.090(a)(2)(C))." (Amended text in bold.)

[12] Section 12 adds a new subsection (g) to Alaska Statute § 15.13.090, which reads: "To satisfy the requirements of (a)(1) of this section and, if applicable, (a)(2)(C) of this section, a communication paid for by an outside-funded entity as that term is defined in AS 15.13.400(19) that includes a print or video component must have the following statement placed in the communication so as to be easily discernible, and in a broadcast, cable, satellite, internet or other digital communication the statement must remain onscreen throughout the entirety of the communication; the statement is not required if the outside entity paying for the communication has no contributors or is a political party: 'A MAJORITY OF CONTRIBUTIONS TO (OUTSIDE-FUNDED ENTITY'S NAME) CAME FROM OUTSIDE THE STATE OF ALASKA.'"

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 4 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 4 of 40

required by statute to include: (1) a sponsor disclaimer stating who paid for the communication; and (2) a disclaimer listing the names and locations of the person or organization's top three contributors.[13]

Third, Ballot Measure 2 creates new statutory requirements applicable to independent expenditure entities regarding "dark money" and the "true source" of contributions to these entities. "Dark money" is defined by Section 17 as "a contribution whose source or sources, whether from wages, investment income, inheritance, or revenue generated from selling goods or services, is not disclosed to the public."[14] Section 6 of the Measure amends Alaska Statute § 15.13.040(j)(3) to require an independent expenditure entity to report on the "true source" of "contributions and all intermediaries" over $2,000.[15] And pursuant to Section 9, "[i]ndividuals, persons, nongroup entities, or groups subject to AS 15.13.040(s) may not contribute or accept $2,000 or more of dark money as that term is defined

---

[13] Alaska Stat. § 15.13.090(a)(1), (2).

[14] Section 17 reads in full: "AS. 15.13.400 is amended by adding a new paragraph to read: (17) 'dark money' means a contribution whose source or sources, whether from wages, investment income, inheritance, or revenue generated from selling goods or services, is not disclosed to the public. Notwithstanding the foregoing, to the extent a membership organization receives dues or contributions of less than $2,000 per person per year, the organization itself shall be considered the true source."

[15] Section 6 reads in full: "AS 15.13.040(j)(3) is amended to read: (3) for all contributions described in (2) of this subsection, the name, address, date, and amount contributed by each contributor, [AND] for all contributions described in (2) of this subsection in excess of $250 in the aggregate during a calendar year, the principal occupation and employer of the contributor, **and for all contributions described in (2) of this subsection in excess of $2,000 in the aggregate during a calendar year, the true source of such contributions and all intermediaries, if any, who transferred such funds, and a certification from the treasurer that the report discloses all of the information required by this paragraph.**" (Amended text in bold.)

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 5 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 5 of 40

in AS 15.13.400(17)," and disclosure of the true source of funds is required of contributions made by intermediaries.[16]  Finally, Section 14 imposes a requirement on the recipient entity to report the "true source" and "all intermediaries" of certain contributions within 24 hours of receipt,[17] and Section 18 provides a statutory definition of "true source" as used in Section 14.[18]

## LEGAL STANDARD

In *Winter v. Natural Resources Defense Council, Inc.*, the Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in

---

[16] Section 9 reads in full: "AS 15.13.074(b) is amended to read: (b) A person or group may not make a contribution anonymously, using a fictitious name, or using the name of another. **Individuals, persons, nongroup entities, or groups subject to AS 15.13.040(s) may not contribute or accept $2,000 or more of dark money as that term is defined in AS 15.13.400(17), and may not make a contribution while acting as an intermediary without disclosing the true source of the contribution as defined in AS 15.13.400(18).**" (Amended text in bold.)

[17] Section 14 reads in full: "AS 15.13.110 is amended by adding a new subsection to read: (k) Once contributions from an individual, person, nongroup entity, or group to an entity that made one or more independent expenditures in one or more candidate elections in the previous election cycle, that is making one or more independent expenditures in one or more candidate elections in the current election cycle, or that the contributor knows or has reason to know is likely to make independent expenditures in one or more candidate elections in the current election cycle exceed $2,000 in a single year, that entity shall report that contribution, and all subsequent contributions, not later than 24 hours after receipt.  For purposes of this subsection, the entity is required to certify and report the true source, and all intermediaries if any, of the contribution as defined by AS 15.13.400(18)."

[18] Section 18 reads in full: "AS 15.13.400 is amended by adding a new paragraph to read: (18) 'true source' means the person or legal entity whose contribution is funded from wages, investment income, inheritance, or revenue generated from selling goods or services. A person or legal entity who derived funds via contributions, donations, dues, or gifts is not the true source, but rather an intermediary for the true source. Notwithstanding the foregoing, to the extent a membership organization receives dues or contributions of less than $2,000 per person per year, the organization itself shall be considered the true source."

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 6 of 40

the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[19] *Winter* places the burden on a plaintiff to make a showing on all of the *Winter* factors before a court will issue a preliminary injunction.[20]

"Courts asked to issue preliminary injunctions based on First Amendment grounds face an inherent tension: the moving party bears the burden of showing likely success on the merits . . . and yet within that merits determination the government bears the burden of justifying its speech-restrictive law."[21] Accordingly, "in the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been

---

[19] 555 U.S. 7, 20 (2008). When, as here, the government is a party to the action, "the balance of equities factor and the public interest factor merge." *Jones v. Bonta*, 34 F.4th 704, 713 (9th Cir. 2022) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).

[20] *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that the Circuit's "serious questions" approach to preliminary injunctions was still valid "when applied as a part of the four-element *Winter* test." *Id.* at 1131–35. Accordingly, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor.'" *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Serious questions are 'substantial, difficult, and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc)). They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance on the merits.'" *Id.* (quoting *Marcos*, 862 F.2d at 1362). All of the *Winter* elements must still be satisfied under this approach for a preliminary injunction to issue.

[21] *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 478 (9th Cir. 2022) (alteration in original) (quoting *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011)).

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 7 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 7 of 40

infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction on speech."[22]

## DISCUSSION

For a preliminary injunction to issue, the Court must determine that each of the *Winter* factors are satisfied. The Court turns first to assessing Plaintiffs' likelihood of success on the merits. Because Plaintiffs advance a facial, as opposed to an as-applied, challenge to certain provisions of Alaska election law,[23] Plaintiffs must demonstrate that a "substantial number of applications [of the challenged provisions] are unconstitutional, judged in relation to [their] plainly legitimate sweep."[24] In that regard, courts will not engage in "speculat[ion] about 'hypothetical' or 'imaginary' cases."[25]

## I. Likelihood of Success on the Merits

### A. Count I

In Count I, Plaintiffs assert that "[c]ompelling individual donors to report donations to independent expenditures violates the First Amendment."[26]

---

[22] *Thalheimer*, 645 F.3d at 1116, *overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019).

[23] *See* Docket 39 at 18 (Plaintiffs acknowledging that "[t]his is a facial challenge," "not an as-applied challenge").

[24] *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)).

[25] *Yamada v. Snipes*, 786 F.3d 1182, 1201 (9th Cir. 2015) (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)).

[26] Docket 40 at 17.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 8 of 40

Specifically, Plaintiffs allege that the donor disclosure requirements in Sections 7 and 15 of Ballot Measure 2 are unconstitutional for two reasons: (1) "because they compel individual independent expenditure donors to report donations within 24 hours to Defendants when the recipient organizations must also report them"; and (2) because "they require donors to report donations to groups that are not actively engaged in independent expenditures."[27]

### 1. Standard of Review

The Court agrees with the parties that the appropriate standard of review applicable to resolution of Count I is exacting scrutiny.[28]  To withstand exacting scrutiny, "there must be 'a substantial relation between the disclosure requirement and a sufficiently important governmental interest.'"[29]  That is, "the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights."[30]  "While exacting scrutiny does not require that disclosure regimes be the least restrictive means of achieving their ends, it does require that they be narrowly tailored to the government's asserted interest."[31]  Narrow tailoring "require[s] a fit that is not necessarily perfect, but reasonable; that represents not

---

[27] Docket 40 at 17–18, ¶¶ 88, 91.

[28] Docket 18-1 at 7 (citing *Ams. for Prosperity Found*, 141 S. Ct. at 2383); Docket 30 at 5.

[29] *Ams. for Prosperity Found.*, 141 S. Ct. at 2383 (quoting *Doe v. Reed*, 561 U.S. 186, 196 (2010)).

[30] *Id.* (quoting *Reed*, 561 U.S. at 196).

[31] *Id.* at 2383.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 9 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 9 of 40

necessarily the single best disposition but one whose scope is in proportion to the interest served."[32]

### 2. Sufficiently Important Governmental Interest

The parties dispute whether the State has a sufficiently important interest to justify the challenged provisions of Ballot Measure 2. Defendants contend that the State has two important interests with regard to the challenged provisions of the Measure: (1) "the State's interest in an informed electorate" and (2) the State's interest in "'deterr[ing] actual corruption and avoid[ing] the appearance of corruption by exposing large contributions and expenditures to the light of publicity.'"[33]

Plaintiffs, to the contrary, assert that Defendants lack a sufficiently important governmental interest in relation to the challenged provisions of Ballot Measure 2. They concede that "laws requiring disclosure of campaign contributions may serve a governmental interest."[34] But, specifically as to the donor disclosure requirement, Plaintiffs maintain that because the State already requires each independent expenditure entity to report the donations that it receives, "[t]here is

---

[32] *See id.* at 2384 (quoting *McCutcheon v. FEC*, 572 U.S. 185, 218 (2014)).

[33] Docket 30 at 5–7 (quoting *Buckley v. Valeo*, 424 U.S. 1, 67 (1976)).

[34] Docket 18-1 at 7 (citing *Buckley*, 424 U.S. at 81).

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 10 of 40

no state interest in requiring individual donors to report information to the government that the government already has."[35]

The Court finds that the State has a sufficiently important governmental interest in providing voters with information related to the source of funds received by independent expenditure entities. The Supreme Court and the Ninth Circuit have repeatedly recognized that disclaimer and disclosure laws advance the important governmental interest of "providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas."[36] In *Citizens United v. FEC*, for example, the Supreme Court noted that the challenged disclaimer requirement, which applied to electioneering communications funded by independent groups, served an important state interest because a reasonable disclosure requirement "enables the electorate to make informed decisions and give proper weight to different speakers and messages."[37] And in *Buckley v. Valeo*, the Supreme Court recognized that disclosure and disclaimer requirements help citizens "make informed choices in

---

[35] Docket 18-1 at 10; *see* Alaska Stat. § 15.13.040(d).

[36] *Hum. Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1008 (9th Cir. 2010); *see also Citizens United v. FEC*, 558 U.S. 310, 368 (2010); *McConnell v. FEC*, 540 U.S. 93, 196 (2003), *overruled on other grounds by Citizens United*, 558 U.S. 310; *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 792 n.32 (1978) ("Identification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected."); *Buckley*, 424 U.S. at 76; *Family PAC v. McKenna*, 685 F.3d 800, 806 (9th Cir. 2012) (noting the "important (and even compelling) informational interest" in "informing the voting public" through disclosure of contributions to ballot measure committees).

[37] 558 U.S. at 371.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 11 of 40

the political marketplace," particularly when independent groups run ads "while hiding behind dubious and misleading names."[38]  Indeed, while disclaimers may burden First Amendment rights in some ways, they also "advanc[e] the democratic objectives underlying the First Amendment" because "[p]roviding information to the electorate is vital to the efficient functioning of the marketplace of ideas."[39]  The Ninth Circuit, too, has recognized that the government's informational interest in election communications is "vital," "important and well recognized."[40]  And the Ninth Circuit has stressed that "[a]ccess to reliable information becomes even more important as more speakers, more speech—and thus more spending—enter the marketplace, which is precisely what has occurred in recent years."[41]  Accordingly, the State has demonstrated a sufficiently important governmental interest as required by the exacting scrutiny standard.[42]

---

[38] *Id.* at 367 (describing holding of *Buckley*) (quoting *McConnell*, 540 U.S. at 197).

[39] *Brumsickle*, 624 F.3d at 1005.

[40] *Id.* at 1008, 1017.

[41] *Id.* at 1007.

[42] The Court further finds that the State has an important governmental interest in deterring the appearance of and actual corruption in elections, as well as foreign influence in elections.  *See* Alaska Stat. § 15.13.068.  Indeed, the Supreme Court has long recognized that disclosure laws "deter actual corruption and avoid the appearance of corruption by exposing large contributions and expenditures to the light of publicity."  *Buckley*, 424 U.S. at 67.  However, as the Court finds that Plaintiffs are unlikely to prevail on their claim that the challenged provisions are un constitutional based on their substantial relationship to the State's informational interest, it does not separately address the anti-corruption interest in this order.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 12 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 12 of 40

### 3. Substantial Relationship

Plaintiffs contend that the donor disclosure requirement in Section 7 of Ballot Measure 2 is not justified by a substantial and narrowly tailored relationship with the State's informational interest because it is unduly burdensome and duplicative of other reporting requirements, and because it is not sufficiently related to a specific election.[43] The Court discusses each claim in turn.

#### a. The Donor Disclosure Requirement Is Not Unduly Burdensome

Plaintiffs assert that the "burdensome nature" of the donor disclosure requirement "suffices by itself to render the requirement unconstitutional" for three reasons.[44] *First*, they contend that Section 7 imposes "compliance burdens typically reserved for sophisticated parties" on "anyone who writes a moderate-sized check" and maintain that "[r]equiring individuals to meet standards usually reserved for sophisticated parties violates the First Amendment."[45] *Second*, Plaintiffs assert that the obligation to report donations within 24 hours is "a tremendous burden."[46] *Third*, Plaintiffs contend that compliance with the donor disclosure requirement demands "both encyclopedic and prophetic knowledge of Alaska independent expenditure groups," because "a donor must report not only a

---

[43] Docket 18-1 at 7–12.

[44] Docket 18-1 at 8.

[45] Docket 18-1 at 8–9 (citing *Sampson v. Buescher*, 625 F.3d 1247, 1259 (10th Cir. 2010)).

[46] Docket 18-1 at 9.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 13 of 40

contribution to an active independent expenditure group, but also a contribution to any group that has made independent expenditures in the past two years or is likely to do so in the future."[47]

In response, Defendants contend that compliance with the disclosure requirements is neither "tremendous[ly] burden[some]" nor does it require "encyclopedic and prophetic knowledge."[48]  Defendants assert that "the plaintiffs offer no evidence that individual donors will find compliance difficult" and describe the burden as limited to "filling out a single online form."[49]  Defendants further argue that the donor disclosure requirement is narrowly tailored to further the State's claimed interests and as such survives exacting scrutiny.[50]

The Court finds that the donor disclosure requirement is not unduly burdensome so as to render Sections 7 and 15 unconstitutional.  Foremost, Plaintiffs provide no evidence to suggest that filling out the online form required by Section 7 within 24 hours of making a contribution is difficult.  Indeed, Plaintiffs fail to provide evidence from the previous 16 months since the donor disclosure requirement took effect to support their assertion that compliance has been burdensome or onerous.  Instead, they have opted to bring a facial challenge; but

---

[47] Docket 18-1 at 9.

[48] Docket 30 at 13 (quoting Docket 18-1 at 9).

[49] Docket 30 at 13.

[50] Docket 30 at 8.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 14 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 14 of 40

Plaintiffs cannot sustain a facial challenge based on "'hypothetical' or 'imaginary' cases."[51]  In contrast, the State has filed seven screen shots of the relevant Statement of Contributions Form 15-5, which appears to be a straightforward document that enables a donor to promptly comply with the reporting requirement.[52]

Plaintiffs rely on *Americans for Prosperity Foundation v. Bonta*, where the Supreme Court invalidated a donor disclosure requirement.[53]  But *Americans for Prosperity* is not a case concerning electioneering by independent expenditure entities.  Rather, it concerned the right of private charities to withhold donor names, and it contained an extensive record that demonstrated that government investigators had only rarely used the donor information to detect charitable fraud, the asserted state interest in that case.[54]  In contrast, here, the donor disclosure requirement in Section 7 is directly related to the State's important interest in promptly providing voters with information about the source of funding of political advertisements by independent expenditure entities.  Moreover, the donor disclosure requirement is tailored to that interest through both the $2,000 minimum and the temporal requirements, discussed below.[55]

---

[51] *Yamada*, 786 F.3d at 1201 (citing *Wash. State Grange*, 552 U.S. at 450).

[52] *See* Docket 30-2 (Hebdon Decl., Ex. B).

[53] *See* Docket 18-1 at 8.

[54] *See Ams. for Prosperity Found.*, 141 S. Ct. at 2381.

[55] Alaska Stat. § 15.13.040(r); *see also* Docket 30 at 10.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 15 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 15 of 40

**b. The Donor Disclosure Requirement Is Not Unduly Duplicative**

Plaintiffs next contend that the donor disclosure requirement is unconstitutional because it imposes a "burden on citizens even though [the State] *already has* a source of the *same information*."[56]  Plaintiffs maintain that because the "[d]isclosure of donations by the donee political entitles" is already required by Alaska Statute § 15.13.040(d), "the burden on individual donors is great, and the marginal gain to the state is very small."[57]

"fulfills any legitimate interest Alaska may claim."[58]  Accordingly, Plaintiffs assert that "[t]here is no state interest in requiring individual donors to report information to the government that the government already has."[59]

Defendants respond that the donor disclosure requirement complements, as opposed to duplicates, other requirements of Alaska campaign finance law. Specifically, Defendants contend that the donor disclosure requirement traces the "true source" of the donor's funds, such that "the law reasonably obligates the donor to provide and certify the truth of this information."[60]  In the absence of the donor disclosure requirement, Defendants maintain that "[p]lacing this obligation

---

[56] Docket 18-1 at 10.

[57] Docket 18-1 at 11.

[58] Docket 18-1 at 10; *see* Alaska Stat. § 15.13.040(d) ("Every person making an independent expenditure shall make a full report of expenditures made and contributions received, upon a form prescribed by the commission, unless exempt from reporting.")).

[59] Docket 18-1 at 10.

[60] Docket 30 at 12.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 16 of 40

solely on the recipient would lead to incomplete or inaccurate reporting of true sources," whereas "[r]equiring both sides of the transaction to report . . . ensures that no transactions are missed."[61]

The Court finds that the donor disclosure requirement in Section 7 overlaps with, but is not completely duplicative of, the reporting requirements for independent expenditure entities. As ABE notes, "the contributor will *always* be in a better position than the [independent expenditure entity] to both identify the true source of its own contribution and quickly report it."[62] Requiring the donor, in addition to the recipient, to report contributions over $2,000 does not unreasonably burden the donor. Rather, requiring prompt disclosure by both parties maximizes the likelihood of prompt and accurate reporting of the information when it is most useful to the electorate.[63]

Plaintiffs' reliance on *McCutcheon v. FEC*, 572 U.S. 185, 221 (2014), is unavailing. In *McCutcheon*, the Supreme Court considered the constitutionality of a regime that imposed limitations on both candidate contributions and expenditures. Here, by contrast, Plaintiffs are challenging the constitutionality of disclosure requirements. As such, the Supreme Court's "prophylaxis-upon-prophylaxis" analysis is inapplicable to the present litigation.

---

[61] Docket 30 at 12.

[62] Docket 33 at 21.

[63] Docket 33 at 22 & n.102; *see Yes on Prop B v. City & County of San Francisco*, 440 F. Supp. 3d 1049, 1059 (N.D. Cal. 2020).

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 17 of 40

Because the donor disclosure requirement is closely tailored to providing valuable funding information to the State and its citizens, Plaintiffs are not likely to succeed on their claim that Sections 7 and 15 of Ballot Measure 2 are unconstitutional because they are duplicative of other reporting requirements.

### c. The Temporal Parameters of the Donor Disclosure Requirement Are Not Unconstitutional

Plaintiffs also take issue with the provisions of Section 7 that extend the reporting requirement beyond a current election cycle to contributions made to an entity that made independent expenditures in the previous election cycle, as well as to contributions made to an entity that the donor "knows or has reason to know is likely to make independent expenditures in one or more candidate elections in the current election cycle."[64] Plaintiffs assert that "the government has no business requiring disclosure of current donations to groups that engaged in independent expenditures in the past or may do so in the future."[65] Plaintiffs maintain that the temporal reach of the donor disclosure requirement is not "tied with precision to specific election periods" or "carefully tailored" to any sufficiently important governmental interest.[66]

---

[64] Alaska Stat. § 15.13.040(r).

[65] Docket 18-1 at 11.

[66] Docket 18-1 at 11–12 (citing *Nat'l Ass'n for Gun Rights, Inc. v. Mangan*, 933 F.3d 1102, 1117–18 (9th Cir. 2019)).

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 18 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 18 of 40

In response, Defendants acknowledge that the disclosure law "might sweep in some excess information at the margins" as it applies to contributions made during a current election cycle to an entity that has not made any expenditures in the current cycle, but did make them in the past cycle.[67] However, Defendants argue that this does not make the disclosure requirement impermissibly overbroad, as it furthers the law's purpose. Defendants explain: "If the law covered only contributions to entities that had *already* made expenditures [in the current election] cycle, many relevant contributions would be missed" because "an entity could amass a secret war chest and delay reporting by beginning its expenditures at the last minute, leaving voters to sort through reports after the election."[68]

Foremost, the Court reiterates that Plaintiffs cannot sustain a facial challenge to the donor disclosure provisions of Ballot Measure 2 based on "'hypothetical' or 'imaginary' cases."[69] Plaintiffs have not submitted any evidence that they have been impacted by the temporal scope of the donor reporting requirement. Nor have they demonstrated that a "substantial number" of contributions subject to the donor reporting requirement are unconstitutional in relation to the "plainly legitimate sweep" of the requirement.[70] The Court finds that

---

[67] Docket 30 at 10.

[68] Docket 30 at 10.

[69] *Yamada*, 786 F.3d at 1201 (citing *Wash. State Grange*, 552 U.S. at 450).

[70] *Ams. for Prosperity Found.*, 141 S. Ct. at 2387.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 19 of 40

the temporal reach of Section 7 is substantially related and narrowly tailored to the State's important interest in providing voters with prompt information related to the funding of political advertisements in a current election cycle. Specifically, requiring the disclosure of donations made to independent expenditure entities in the previous election cycle and are likely to make independent expenditures in the current election cycle helps ensure that voters will promptly have access to complete information regarding the source of independent expenditures in advance of an election, and prevents donors from sidestepping disclosure requirements by strategically donating in the final stretch of an election cycle.

For the foregoing reasons, Plaintiffs have not established a likelihood of success on the merits of Count I.[71]

## B. Count II

In Count II, Plaintiffs assert that "[t]he entirety of AS 15.13.090, as modified by Sections 11 and 12 of Ballot Measure 2, is unconstitutional" because it "[c]ompel[s] speakers to recite government-imposed scripts on campaign materials" and discriminates against nonresidents in violation of the First Amendment.[72] Alaska Statute § 15.13.090, as modified by the Measure, requires

---

[71] The Court has applied the more stringent "likelihood of success on the merits" analysis; however, applying the more relaxed "substantial question" analysis would yield the same result. Even assuming, without deciding, that the "balance of hardships tips *sharply* in the plaintiff's favor," Plaintiffs have not carried their burden at this stage of the litigation to demonstrate that an adequately "serious question" exists with regard to the constitutional validity of the donor disclosure provisions in Sections 7 and 15.

[72] Docket 40 at 18–20.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 20 of 40

political advertisements by independent expenditure entities to include three on-ad disclaimers: (1) a sponsor disclaimer; (2) a top-three-donor disclaimer; and (3) when applicable, an out-of-state disclaimer.[73]

## 1. Standard of Review

As a threshold matter, the parties disagree as to which standard of review applies to the disclaimer requirements: strict scrutiny or exacting scrutiny. Plaintiffs maintain that the disclaimer requirements are subject to strict scrutiny because they are content-based requirements that "force[] Plaintiffs to alter their advertisements that seek to inform or convince people on a particularly political issue, to also encourage viewers or listeners to consider Plaintiffs' own donors."[74] They point to *National Institute of Family & Life Advocates (NIFLA) v. Becerra*, in which the Supreme Court applied strict scrutiny to strike down a California statute compelling crisis pregnancy centers to post notices about the availability of abortion services.[75] Plaintiffs also rely on *ACLU of Nevada v. Heller*, a case in which the Ninth Circuit applied strict scrutiny to a Nevada law that "require[d] certain groups or entities publishing 'any material or information relating to an

---

[73] Plaintiffs do not specifically challenge the sponsor disclaimer by itself but do assert that the three disclaimers are overly burdensome when considering their cumulative effect because "they take up such a significant portion of an advertisement." *See* Docket 40 at 19–20, ¶ 98.

[74] Docket 18-1 at 14-15. Specifically with regard to the out-of-state disclaimer, Plaintiffs also assert that strict scrutiny is the appropriate standard because it is a "law[] that discourage[s] a certain class of people from making political contributions and thus burden[s] political speech." Docket 18-1 at 24.

[75] 138 S. Ct. 2361 (2018); *see also* Docket 18-1 at 13–14.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 21 of 40

election, candidate or any question on a ballot' to reveal on the publication the names and addresses of the publication's financial sponsors."[76]  There, the court recognized a "constitutionally determinative distinction between on-publication identity disclosure requirements and after-the-fact reporting requirements," holding that the former should receive strict scrutiny because such requirements "involve the direct alteration of the content of a communication."[77]

Defendants, by contrast, contend that exacting scrutiny is the appropriate standard because the Supreme Court applied that standard to "both disclosures and disclaimers" in *Citizens United*, "even though the plaintiff had advocated for strict scrutiny—like the plaintiffs here—on the theory that disclaimers constitute 'compelled speech' or 'content-based restrictions on political speech.'"[78]  They assert that *Heller* is no longer good law because it was decided before *Citizens United* and maintain that the Ninth Circuit now "recognizes *Citizens United* as the controlling law on political disclaimers."[79]  Plaintiffs reply that *Citizens United* is inapposite because it "said not one word about compelled speech" and only addressed a "stand by your ad" disclaimer.[80]  They assert that the Measure "goes

---

[76] 378 F.3d 979, 981, 992 (9th Cir. 2004) (emphasis omitted); *see also* Docket 18-1 at 18.

[77] *Heller*, 378 F.3d at 994.

[78] Docket 30 at 14–15 (citing *Citizens United*, 558 U.S. at 366; Br. for Appellant at 43–44, *Citizens United*, 558 U.S. 310 (Case No. 08-205), 2009 WL 6147).

[79] Docket 30 at 15 (citing *Yamada*, 786 F.3d at 1202).

[80] Docket 39 at 10.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 22 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 22 of 40

far beyond" such a disclaimer and that "[t]he State's interest in forcing a candidate to acknowledge his own ad is different from exposing donors on the face of the ad."[81]

The Court finds that, to the extent that the Ninth Circuit's decision in *Heller* can be read as requiring strict scrutiny for all on-ad political disclaimer requirements, such a holding is "clearly irreconcilable" with the Supreme Court's subsequent decision in *Citizens United*.[82]  Contrary to Plaintiffs' assertions, the Supreme Court did consider compelled speech in *Citizens United* because one of the challenged statutory provisions that the Supreme Court upheld required that "televised electioneering communications funded by anyone other than a candidate must include a disclaimer" stating the "name and address (or Web site address) of the person or group that funded the advertisement."[83]  The Supreme Court made clear that its rationale in employing exacting scrutiny applied to both disclosures *and* disclaimers, explaining that "[d]isclaimer and disclosure

---

[81] Docket 39 at 10.

[82] *See United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)).  For a Supreme Court decision to "effectively overrule[]" Ninth Circuit precedent, the Supreme Court decision must "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable."  *Id.* (quoting *Miller*, 335 F.3d at 900).  It appears that *Citizens United* and *Heller* are irreconcilable in this respect because *Citizens United*'s reasoning in applying exacting scrutiny, which distinguished on-ad disclaimer and disclosure requirements as less burdensome than outright caps or bans on electioneering activities, undercuts the reasoning underlying *Heller*'s application of strict scrutiny, which instead turned on the temporal distinction between on-publication and after-the-fact disclosure requirements.  *Compare Citizens United*, 558 U.S. at 366, *with Heller*, 378 F.3d at 994.

[83] *See Citizens United*, 558 U.S. at 366 (citing 2 U.S.C. § 441d(a)(3)).

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 23 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 23 of 40

requirements may burden the ability to speak, but they 'impose no ceiling on campaign-related activities,' and 'do not prevent anyone from speaking.'"[84] Indeed, the Ninth Circuit has since recognized *Citizens United* as controlling on the appropriate level of scrutiny for political disclaimer requirements.[85]  In *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, for example, the Ninth Circuit, sitting en banc, cited *Citizens United* to conclude that exacting scrutiny applied to California's statutory requirement that the name of the official proponent of a ballot initiative must appear on each section of the initiative petition that is circulated to voters.[86]

Thus, even if a disclosure or disclaimer is viewed as compelling speech, exacting scrutiny is the appropriate standard to apply in considering Plaintiffs' likelihood of success on the merits of Count II.  To survive exacting scrutiny, the disclaimer requirements must be "substantially related to a sufficiently important

---

[84] *Id.* at 366 (citation omitted) (first quoting *Buckley*, 424 U.S. at 64; then quoting *McConnell*, 540 U.S. at 201); *see also Reed*, 561 U.S. at 196 (stating that disclosure requirements are subject to less demanding standard of review because they are "not a prohibition on speech").

[85] *See Montanans for Cmty. Dev. v. Mangan*, 735 Fed. App'x 280, 284 (9th Cir. 2018) (citing *Citizens United*, 558 U.S. at 369) (applying exacting scrutiny to "paid-for" attribution requirement for electioneering communications); *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520, 535–36 (9th Cir. 2015) (en banc) (citing *Citizens United*, 558 U.S. at 366–67); *Yamada*, 786 F.3d at 1194 (applying exacting scrutiny to requirement that political advertisements include disclaimer stating whether they are broadcast or published with approval of a candidate); *see also San Franciscans Supporting Prop B v. Chiu,* Case No. 22-cv-02785-CRB, 2022 WL 1786573, at *4 (N.D. Cal. June 1, 2022) (concluding that *Heller's* analysis of disclaimer law as content-based restriction subject to strict scrutiny is no longer good law in light of *Citizens United* and other Supreme Court cases applying exacting scrutiny to disclaimers), *appeal filed*, Case No. 22-15824 (9th Cir. June 6, 2022).

[86] 782 F.3d at 535–36 (citing *Citizens United*, 558 U.S. at 366–67).

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 24 of 40

governmental interest"[87] and "be narrowly tailored to the government's asserted interest."[88]

### 2. Sufficiently Important Governmental Interest

As discussed above, the Court finds that the State has a sufficiently important governmental interest in providing voters with information related to the funding of political advertisements by independent expenditure organizations. While Plaintiffs argue in their motion that the out-of-state disclaimer does not serve an important state interest in preventing corruption,[89] Defendants respond that they do not "seek[] to justify the out-of-state disclaimer as a means of preventing quid pro quo corruption."[90] Thus, the Court will only consider whether the disclaimers are justified based on the State's informational interest.

### 3. Substantial Relation

Plaintiffs assert that the on-ad disclaimer requirements significantly burden their First Amendment rights in three ways and that these burdens are not justified by a substantial and narrowly tailored relationship between the disclaimers and the

---

[87] *Brumsickle*, 624 F.3d at 1005; *cf. Ams. for Prosperity Found.*, 141 S. Ct. at 2383 ("Under strict scrutiny, the government must adopt 'the least restrictive means of achieving a compelling state interest,' rather than a means substantially related to a sufficiently important interest." (citation omitted) (quoting *McCullen v. Coakley*, 573 U.S. 464, 478 (2014))).

[88] *Ams. for Prosperity Found.*, 141 S. Ct. at 2383.

[89] *See* Docket 18-1 at 24.

[90] Docket 30 at 20.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 25 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 25 of 40

State's informational interest.[91]   The Court discusses each of Plaintiffs' claimed burdens in turn.

### a. Top-Three-Donor Disclaimer

Plaintiffs assert that the disclaimer requirements, particularly the top-three-donor disclaimer contained in Section 11 of the Measure, burden their First Amendment rights because they "force[] them to speak a message they do not want to voice."[92]   They maintain that the top-three-donor disclaimer is akin to the crisis pregnancy center notices invalidated in *NIFLA* because Plaintiffs "believe strongly in the right to privacy for citizens and would not include their donors' information in their advertisements if not forced to by the law."[93]

Given this burden, Plaintiffs contend that the top-three-donor disclaimer is not substantially related to an informational interest or narrowly tailored because the State's interest in informing the electorate is already served by other disclosure requirements; thus, the on-ad top-three-donor disclaimer "only provides, at best, a marginal gain in convenience for viewers to see these names on the ad itself, rather than having to trouble themselves to find it on the Internet."[94]   Further, Plaintiffs assert that "[t]he on-ad sponsor disclaimer (the name of the independent

---

[91] Docket 18-1 at 21, 26–27.

[92] Docket 18-1 at 16.

[93] Docket 18-1 at 16–17 ("Forcing an organization committed to limited government and personal freedom to announce the names of its donors in advertisements is similar to forcing pro-life groups to share information about abortion access.").

[94] Docket 18-1 at 19.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 26 of 40

expenditure committee) alone easily satisfies any information interest" and that conveying the top three donors on the ad may actually "decrease viewers' information by giving them a distorted view of the organization's overall donors."[95]

Defendants disagree with Plaintiffs' assessment of the burdens created by the top-three-donor disclaimer. They contend that *NIFLA* is not analogous because that case "was not about political disclaimers, and the disclaimers there were much more burdensome."[96] Further, Defendants maintain that there is a sufficiently substantial relation between the top-three-donor disclaimer requirement and the government's informational interest, asserting that: (1) the on-ad sponsor disclaimer alone is insufficient because "disclosing donor information prevents entities from 'hiding behind dubious and misleading names' . . . while trying to influence the outcome of elections";[97] and (2) including "[donor] information in the ads themselves advances [the government's informational

---

[95] Docket 18-1 at 20. In addition, Plaintiffs cite *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 348–49 (1995), for the proposition that "[t]he simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements or disclosures she would otherwise omit." Docket 18-1 at 19. However, *McIntyre* is factually distinct from this litigation, as it involved "individuals acting independently and using only their own modest resources" to engage in unorganized political speech regarding ballot initiatives. *See* 514 U.S. at 351–52; *cf.* Docket 33 at 30 (Intervenor-Def.'s Mot. to Dismiss) ("Here, there are already minimum contribution and expenditure thresholds to protect limited and unsophisticated political speech from arguably burdensome requirements, and Ballot Measure 2 did not change Alaska's disclaimer and disclosure requirements for ballot initiatives." (footnote omitted)). Indeed, as the Supreme Court's more recent decision in *Citizens United* demonstrates, an informational interest can be sufficiently important to justify disclaimer requirements for electioneering communications made by independent expenditure entities. *See* 558 U.S. at 369–71.

[96] Docket 30 at 16.

[97] Docket 30 at 16 (quoting *McConnell*, 540 U.S. at 196–97).

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 27 of 40

interest] more efficiently and effectively than requiring voters to search for disclosure forms online."[98]

In support of these contentions, Defendants cite *Gaspee Project v. Mederos*, a recent case in which the First Circuit applied exacting scrutiny to uphold a Maine law requiring on-ad disclaimers identifying the ad sponsor's top five donors.[99] In *Gaspee*, the First Circuit rejected the plaintiffs' arguments that the disclaimer "serve[d] no informational interest and [was] essentially redundant of [a separate] disclosure requirement."[100] The court determined that the on-ad disclaimer was "not entirely redundant to the donor information revealed by public disclosures" because it was "a more efficient tool for a member of the public who wishes to know the identity of the donors backing the speaker."[101] Further, the court noted that an on-ad disclaimer "may be more effective in generating discourse" because it "may elicit debate as to both the extent of donor influence on the message and the extent to which the top five donors are representative of the speaker's donor base."[102]

---

[98] Docket 30 at 17.

[99] 13 F.4th 79, 91 (1st Cir. 2021), *cert. denied*, Case No. 21-890, 2022 WL 1205841 (U.S. Apr. 25, 2022); *see also* Docket 30 at 17–18.

[100] *Gaspee Project*, 13 F.4th at 91.

[101] *Id.* ("The public is 'flooded with a profusion of information and political messages,' and the on-ad donor disclaimer provides an instantaneous heuristic by which to evaluate generic or uninformative speaker names." (quoting *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 57 (5th Cir. 2011))).

[102] *Id.*

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 28 of 40

Balancing the burdens against the governmental interest, the Court finds that the on-ad top-three-donor disclaimer requirement is substantially related to the important governmental interest in an informed electorate and is narrowly tailored to further that interest. The Court agrees with Defendants that the burden here on independent expenditure entities is much lower than in *NIFLA*, where pro-life pregnancy crisis centers were required to "inform women how they can obtain state-subsidized abortions," which was "the very practice that [they] are devoted to opposing."[103] Here, while Plaintiffs may hold broad ideological concerns about privacy, the on-ad top-three-donor disclaimer does not require them to convey a message that is directly contrary to whatever political statement they seek to make in their electioneering communications.

With regard to the substantial relation between the burdens created by the on-ad top-three-donor disclaimer requirement and the government's informational interest, the Court finds the reasoning of the First Circuit in *Gaspee Project* persuasive. While voters have access to donor information through the required disclosures to the APOC, the on-ad placement of some of that information provides a far more efficient and effective form of disclosure. As the Supreme Court noted in *Citizens United*, there is value in the "prompt disclosure" of such information, as it "can provide shareholders and citizens with the information needed to hold corporations and elected officials accountable for their positions and

---

[103] *NIFLA*, 138 S. Ct. at 2371.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 29 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 29 of 40

supporters."[104]  Given the modest nature of the burden imposed by the on-ad top-three-donor disclaimer requirement and the fact that exacting scrutiny does not require that the government use the least restrictive means possible, there is a sufficient relationship between the government's informational interest and the on-ad top-three-donor disclaimer requirement to withstand constitutional scrutiny.[105]  Plaintiffs are unlikely to succeed on the merits of Count II based on the on-ad top-three-donor disclaimer requirement.

### b. Out-of-State Disclaimer

Plaintiffs challenge the out-of-state disclaimer requirement in Section 12 of the Measure as unduly burdensome because it discriminates against nonresidents without sufficient justification, asserting that "[o]ut-of-state campaign contribution restrictions like Alaska's are routinely invalidated by courts."[106]  Plaintiffs primarily rely on *Thompson v. Hebdon*, a recent decision in which the Ninth Circuit held that Alaska's nonresident aggregate contribution limit, which barred candidates from accepting more than $3,000 per year from non-Alaskans, violated the First

---

[104] *Citizens United*, 558 U.S. at 371.

[105] *See Family PAC*, 685 F.3d at 809 (upholding disclosure requirements when they "impose[d] only modest burdens on First Amendment rights, while serving a governmental interest in an informed electorate that is of the utmost importance").

[106] Docket 18-1 at 23–25 (citing *Thompson v. Hebdon*, 7 F.4th 811 (9th Cir. 2021); *Landell v. Sorrell*, 382 F.3d 91 (2d Cir. 2004); *SD Voice v. Noem*, 380 F. Supp. 3d 939 (D.S.D. 2019)). Plaintiffs also cite two cases regarding bans on out-of-state petition circulators.  Docket 18-1 at 26 (citing *We the People PAC v. Bellows*, 519 F. Supp. 3d 13 (D. Me. 2021), *appeal filed*, Case No. 21-1149 (1st Cir. Feb. 23, 2021); *Citizens in Charge v. Gale*, 810 F. Supp. 2d 916 (D. Neb. 2011)).

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 30 of 40

Amendment.[107]  There, the court concluded that the contribution limit did not serve an anti-corruption interest and that even if it did, the limit was not sufficiently tailored to serve that interest.[108]

Plaintiffs assert that there is not a substantial relation between the out-of-state disclaimer and the State's informational interest because "the donors to independent expenditure groups are already disclosed to the state, and to the public on the state's website, so one can easily determine whether any particular group draws it support from outside Alaska."[109]  Further, they maintain that the disclaimer requirement is not narrowly tailored due to the Measure's over-inclusive definition of "outside-funded entity": a group that takes donations from a true source with a principal place of business outside Alaska.[110]  Plaintiffs suggest that "one's principal place of business is a poor proxy for one's interest in Alaska's elections," particularly because a donor may have "significant operations in Alaska" while "happening to be headquartered elsewhere."[111]

Defendants disagree, maintaining that the out-of-state disclaimer is "narrowly tailored to the important state interest in informing voters," particularly when entities use misleading names, such as "Families of the Last Frontier," that

---

[107] 7 F.4th at 824.

[108] *See id.* at 824–25.

[109] Docket 18-1 at 26.

[110] Docket 18-1 at 27.

[111] Docket 18-1 at 27.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 31 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 31 of 40

imply that they are primarily funded by Alaska residents.[112]  While Defendants acknowledge that donors with an out-of-state principal place of business may still have a valid interest in Alaska's elections, they note that those donors are not barred from participating—the Measure only requires disclosure.[113]

As Defendants note, *Thompson* and the other cases that Plaintiffs cite concerned contribution limits or bans on non-resident petition circulators rather than the type of disclaimer requirement at issue here.[114]  While the out-of-state disclaimer places some burden on political speech, it is not nearly as burdensome as an outright ban or cap on contributions or certain political activities.  It does not limit how much out-of-state donors can give, nor does it even directly burden out-of-state donors; rather, it burdens independent expenditure entities that receive over a certain percentage of their funds from out-of-state donors.  Thus, given the relatively minimal burden it imposes, there is a sufficiently substantial relation between the out-of-state disclaimer and the State's informational interest.

With respect to tailoring, the Court again finds the reasoning of *Gaspee Project* instructive.  While there are other avenues for voters to learn about independent expenditure entities' funding sources, an on-ad disclaimer makes that

---

[112] Docket 30 at 19–20; *see, e.g.*, Docket 33 at 11–12, 12 n.57 (citing Docket 33-1 at 4, 20, ¶¶ 11, 20 (Kendall Aff.)) (noting that Families of the Last Frontier received over 99.5% of its funding from out-of-state donations in 2018).

[113] Docket 30 at 20.

[114] Docket 30 at 19 ("The plaintiffs' arguments about this all rest on the mistaken premise that this disclaimer is analytically equivalent to banning or limiting the quantity of out-of-state speech in Alaska's elections.").

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 32 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 32 of 40

information far more accessible and presents it at a highly useful time for voters attempting to weigh competing political messages. And though an entity's principal place of business may be an imperfect proxy for its interest in Alaska's elections, it is likely an accurate measure in most cases; exacting scrutiny does not require a perfect fit between a state's important informational interest and the means used to further that interest. Thus, the Court finds that the out-of-state disclaimer has a substantial relation to Defendants' informational interest and is narrowly tailored to further that interest. Plaintiffs are unlikely to succeed on the merits of Count II based on the out-of-state disclaimer requirement.

### c. Ad Space

Plaintiffs also assert that all three disclaimers, taken together, "restrict[] their ability to speak their preferred message" because the disclaimers consume substantial ad space.[115] They primarily rely on *American Beverages Association v. City & County of San Francisco*, a case in which the Ninth Circuit overturned a district court's denial of a preliminary injunction against enforcement of a mandatory health warning on ads for sugar-sweetened beverages.[116] There, the Ninth Circuit held that the disclaimer impermissibly compelled speech because the warning was required to "occupy at least 20% of the advertisement," but expert

---

[115] Docket 18-1 at 16, 22.

[116] 916 F.3d 749, 754 (9th Cir. 2019); Docket 18-1 at 22; Docket 39 at 11–12.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 33 of 40

testimony showed that a 10% warning would have sufficed.[117]  Thus, "the 20% requirement [was] not justified and [was] unduly burdensome when balanced against its likely burden on protected speech."[118]

Defendants respond that Plaintiffs "offer no evidence to support their conclusory assertions that the disclaimers will take up too much space in their advertisements."[119]

The Court finds that *American Beverage Association* is not controlling here, as that case concerned commercial speech.  Different considerations are at play when regulating political advertisements, and the State's interest in an informed electorate may justify more burdensome disclaimers.  Indeed, in *Citizens United*, the disclaimer requirement upheld by the Supreme Court required the plaintiff to devote four seconds of a ten-second ad to a disclaimer—a full 40% of the ad space.[120]  There, the Supreme Court explicitly rejected the plaintiff's argument that the disclaimer was impermissible because it "decrease[d] both the quantity and

---

[117] 916 F.3d at 754, 757.

[118] *Id.* at 757.  However, the court was careful to note that its holding was based on the specific facts of the case; it "[did] not hold that a warning occupying 10% of product labels or advertisements necessarily is valid, nor [did it] hold that a warning occupying more than 10% of product labels or advertisements necessarily is invalid."  *Id.*

[119] Docket 30 at 17.

[120] *See Citizens United*, 558 U.S. at 320, 366, 371.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 34 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 34 of 40

effectiveness of the group's speech by forcing it to devote four seconds of each advertisement to the spoken disclaimer."[121]

Moreover, unlike in *American Beverage Association*, the disclaimers here are not required by law to take up a certain percentage of ad space; nor do Plaintiffs offer evidence that shorter or less prominent disclaimers would serve the State's informational interest equally well.[122] While Plaintiffs assert that the required disclaimers "easily and obviously consume 20 percent of a standard thirty- or sixty-second TV or radio ad,"[123] they do not supply one of their advertisements as an example or otherwise provide evidentiary support for this claim sufficient to demonstrate that a "substantial number of [the disclaimer requirements'] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."[124]

In sum, the Court finds that Plaintiffs have not demonstrated that the ad space consumed by the three disclaimers is unduly burdensome in light of the vital informational interest served by those disclaimers. The specifics of how the disclaimers must be displayed or spoken are substantially related to the State's important informational interest and are narrowly tailored to serve that interest.

---

[121] *Id.* at 368.

[122] *Cf. Am. Beverages Ass'n*, 916 F.3d at 757.

[123] Docket 39 at 11.

[124] *Ams. for Prosperity Found.*, 141 S. Ct. at 2387.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 35 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 35 of 40

Plaintiffs are thus unlikely to succeed on the merits of Count II based on the ad space consumed by the disclaimers.[125]

## C. Count III

In Count III, Plaintiffs challenge Sections 6, 9, 14, and 18 of Ballot Measure 2. Together, these sections require an independent expenditure entity to identify the "true source" of all contributions it receives of over $2,000. Plaintiffs assert that "[c]ompelling primary and secondary donor disclosure violates the First Amendment."[126] Plaintiffs contend that Ballot Measure 2's "true source" requirement burdens speech in multiple significant ways, including by demanding that recipients disclose information they may not have, limiting who an independent expenditure entity may solicit funds from, and sweeping uninterested third parties into Alaskan elections.[127] Plaintiffs also assert that "Ballot Measure 2 violates [the] freedom of private association by compelling independent expenditure groups to track and disclose not only their own donors, but also donors to those donors, and

---

[125] The Court has applied the more stringent "likelihood of success on the merits" analysis to the Plaintiffs' challenges to the disclaimer requirements; however, applying the more relaxed "substantial question" analysis would yield the same result. Even assuming, without deciding, that the "balance of hardships tips *sharply* in [their] favor," Plaintiffs have not carried their burden at this stage of the litigation to demonstrate that an adequately "serious question" exists with regard to the disclaimer requirements.

[126] Docket 40 at 20.

[127] Docket 18-1 at 30–31.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 36 of 40

donors to those donors' donors, reaching out indefinitely to what it defines as the 'true source' of the money."[128]

### 1. Standard of Review

Plaintiffs assert, and Defendants do not contest, that exacting scrutiny applies to Claim III.[129]  The Court applies that standard to the challenged sections.

### 2. Sufficiently Important Governmental Interest

As discussed above, the Court finds that the State has a sufficiently important governmental interest in providing voters with information related to the funding of political advertisements by independent expenditure entities.

### 3. Substantial Relation

Plaintiffs contend that the recipient disclosure obligations of Ballot Measure 2 are not substantially related to the government's stated interest because these sections "could have been more narrowly tailored by only requiring disclosure of donors who actively participating [sic] in determining how these funds are used."[130]  Plaintiffs assert that because the "'true source' requirement is not 'tied with precision' or 'carefully tailored' to actual electoral activity," these sections of Ballot Measure 2 fail to meet the exacting scrutiny standard.[131]  Plaintiffs assert

---

[128] Docket 18-1 at 28.

[129] Docket 18-1 at 28; Docket 30 at 21–27.

[130] Docket 40 at 21, ¶ 105 (citing *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1 (D.C. Cir. 2009)).

[131] Docket 18-1 at 29.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 37 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 37 of 40

that the First Amendment protects major contributors to independent expenditure entities from being required to disclose the "true source" of the contribution to the independent expenditure entity, that is in turn required by these sections of Ballot Measure 2 to report this information to the State.

Defendants respond that the State and its voters have an important interest in knowing who is contributing to independent expenditure entities.[132] And the ABE maintains that "there is no constitutional right to make 'dark money' contributions."[133]

The Court finds that Ballot Measure 2's "true source" definition, together with its requirement that independent expenditure entities report these true sources to the State, are both substantially related and narrowly tailored to fulfill the State's informational interest in informing voters about the actual identity of those trying to influence the outcome of elections.

The Court further notes that Plaintiffs' hypothetical examples have not demonstrated that the true source disclosure requirements in Sections 6, 9, 14, and 18 are inadequately tailored. Plaintiffs lack standing to maintain an action based on hypothetical scenarios by non-parties to this action. And the Ninth Circuit

---

[132] Docket 30 at 21.

[133] Docket 33 at 35.

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 38 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 38 of 40

has stressed that courts are not to "speculate about 'hypothetical' or 'imaginary' cases" when evaluating a facial challenge to a disclosure requirement.[134]

For these reasons, the Court finds that the true source reporting requirements in Sections 6, 9, 14, and 18 of Ballot Measure 2 withstand review under exacting scrutiny, and thus Plaintiffs are not likely to succeed on the merits of Claim III.[135]

## CONCLUSION

Preliminary injunctive relief is an extraordinary remedy, and in the context of elections, the Supreme Court has recognized that "lower federal courts should ordinarily not alter . . . election rules on the eve of an election."[136] Plaintiffs waited over one year to seek preliminary injunctive relief; such "[a] delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."[137] As set forth above, the Court has determined that Plaintiffs have not demonstrated a likelihood of success on any of the three counts pleaded in their

---

[134] *Yamada*, 786 F.3d at 1201 (9th Cir. 2015) (citing *Wash. State Grange*, 552 U.S. at 450).

[135] The Court has applied the more stringent "likelihood of success on the merits" analysis to the Plaintiffs' challenges to the true source reporting requirements; however, applying the more relaxed "substantial question" analysis would yield the same result. Even assuming, without deciding, that the "balance of hardships tips *sharply* in [their] favor," Plaintiffs have not carried their burden at this stage of the litigation to demonstrate that an adequately "serious question" exists with regard to the true source reporting requirements.

[136] *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam); *Frank v. Walker*, 574 U.S. 929 (2014); *Veasey v. Perry*, 574 U.S. 951 (2014)).

[137] *See Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984).

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 39 of 40

complaint. Because the failure to meet any *Winter* factor warrants denial of a motion for preliminary injunctive relief, the Court does not address the remaining three *Winter* factors.

In light of the foregoing, IT IS ORDERED that Plaintiffs' motions for a preliminary injunction at Docket 7 and Docket 18 are DENIED.

DATED this 14th day of July, 2022 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:22-cv-00077-SLG, *Smith, et al. v. Helzer, et al.*
Order re Motions for Preliminary Injunction
Page 40 of 40

Case 3:22-cv-00077-SLG   Document 48   Filed 07/14/22   Page 40 of 40