# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

ROBERT GRIFFIN, *et al.*,

        Plaintiffs,

        v.

RICHARD STILLIE, JR., in his official capacity as chair of the Alaska Public Offices Commission, *et al.*,

        Defendants,

        and

ALASKANS FOR BETTER ELECTIONS, INC.,

        Intervenor-Defendant.

Case No. 3:22-cv-00077-SLG

## ORDER ON MOTION TO COMPEL

Before the Court at Docket 112 is Plaintiffs' Motion to Compel Full & Complete Deposition Responses.[1] Defendants responded in opposition at Docket 116, to which Plaintiffs replied at Docket 118.[2] Oral argument was not requested and was not necessary to the Court's determination. The factual allegations and

---

[1] Plaintiffs are three individual donors, Robert Griffin, Allen Vezey, and Trevor Shaw, and two independent expenditure organizations, Families of the Last Frontier and Alaska Free Market Coalition.

[2] Defendants are the five members of the Alaska Public Offices Commission ("the APOC") and are sued in their official capacities: Commission Chair Richard Stillie Jr. and Commission members Lanette Blodgett, Eric Feige, Dan LaSota, and Walt Monegan.

procedural history of this case are set forth in detail in the Court's order at Docket 48. The Court assumes familiarity here.

## BACKGROUND

This case concerns a challenge to three sets of Alaska campaign-finance laws passed in November 2020 under Ballot Measure 2.[3] The APOC administers the state's campaign-finance laws, among other duties.[4]

On August 26, 2025, Plaintiffs served a Notice of Deposition under Rule 30(b)(6) of the Federal Rules of Civil Procedure to take the deposition of Defendants.[5] The Notice requested that Defendants "designate one or more 30(b)(6) witnesses who are knowledgeable and prepared to testify fully on the Defendants['] behalf" on seven topics.[6] These included Topics 2, 3, and 7, which sought testimony on: "The standards and criteria the APOC uses when evaluating complaints" (Topic 2); "The standards and criteria the APOC uses when determining penalty reductions and tolling periods for enforcement actions" (Topic 3); and "How the APOC considers First Amendment concerns when interpreting the regulations imposed by Ballot Measure 2" (Topic 7).[7]

---

[3] Docket 1 at ¶ 15; *see* Docket 56.

[4] Alaska Stat. § 15.13.030 (Duties of the commission).

[5] Docket 112-1 at 4; Docket 112-3 at 2.

[6] Docket 112-3 at 2-3.

[7] Docket 112-3 at 3.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 2 of 29
Case 3:22-cv-00077-SLG     Document 171     Filed 06/02/26     Page 2 of 29

On September 17, 2025, Defendants' counsel wrote to Plaintiffs' counsel stating that they "need to confer about the topics listed in the notice to APOC, as required by Rule 30(b)(6). Specifically, we're not entirely sure what to make of topics #2, 3, and 7. It's probably easiest to chat those through."[8]

On October 2, 2025, Defendants' counsel identified the Rule 30(b)(6) deponent in an email to Plaintiffs' counsel and wrote:

> APOC will offer its executive director [Heather Hebdon] as its 30(b)(6) deponent on Monday, but to the extent that topics 2, 3, and 7 seek to inquire about commission deliberations (which are confidential and protected by the judicial/adjudicatory privilege), she will not be able to answer those questions. Of course, assuming that is the intent of these topics, no deponent could do so. However, APOC regulations provide significant guidance regarding the standards and criteria employed by APOC when evaluating complaints and assessing penalties and tolling; and, additionally, APOC decisions are explained in written opinions which reveal the Commission's reasoning.[9]

On October 5, 2025, Plaintiffs' counsel responded and stated that the parties would "have to have a discussion about the scope of the deliberative process privilege if you intend to assert it broadly, but I think we should have plenty to talk about that doesn't fall anywhere under that."[10]

On October 6, 2025, Ms. Hebdon appeared for the 30(b)(6) deposition.[11] Ms. Hebdon testified that she has been the executive director of the APOC for the

---

[8] Docket 116-1 at 2-3.

[9] Docket 116-1 at 2.

[10] Docket 116-1 at 1.

[11] Docket 112-4.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 3 of 29
Case 3:22-cv-00077-SLG   Document 171   Filed 06/02/26   Page 3 of 29

past nine years.[12]   As the executive director, Ms. Hebdon testified that she oversees all aspects of the agency's day-to-day operations.[13]   She also participates "in drafting advisory opinions," reviews "all investigation reports before they are issued," and acts "as the go-between between our Commission and staff, and many times between the Commission and Department of Law."[14]

During the deposition, when asked about APOC's consideration of compliance burdens when enforcing Ballot Measure 2, Ms. Hebdon stated that she was testifying for "APOC as an agency, but not as my Commission, who acts as the decision-maker."[15]   When asked whether compliance burdens would discourage people from speaking, Ms. Hebdon replied: "from staff's perspective . . . it's not our job to analyze constitutional arguments. Our – our job is to enforce the statutes and regulations."[16]

Plaintiffs' counsel then asked: "Is that true of the commissioners as well, as APOC, as the Commission, when they make the Commission's decisions, are they not taking that into account?";  Ms. Hebdon replied that she "can't speak for the Commission."[17]   Plaintiffs' counsel then stated, "[W]ith all due respect, ma'am,

---

[12] Docket 112-4 at 5.

[13] Docket 130 ¶ 1.

[14] Docket 112-4 at 5.

[15] Docket 112-4 at 24.

[16] Docket 112-4 at 23.

[17] Docket 112-4 at 23.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 4 of 29
Case 3:22-cv-00077-SLG    Document 171    Filed 06/02/26    Page 4 of 29

you're here speaking on behalf of the Commission."[18]  Defendants' counsel then interjected, referenced her October 2 email, and stated "that this witness is not able to talk to you about Commission deliberations and analysis."[19]  Defendants' counsel also stated that she was unsure whether Plaintiffs' counsel was "entitled to ask those questions because of the adjudicatory privilege" and also described the Commission as "a rotating cast of people who may evaluate and analyze these things differently."[20]

As the deposition continued, Defendants' counsel reiterated that Plaintiffs' counsel's questions sought to "inquire into the deliberative views of . . . the Commission, but Ms. Hebdon isn't part of those deliberations, and, therefore, she lacks the ability to tell you what the commissioners are thinking . . . ."[21]  The deposition concluded after approximately 4.5 hours.[22]

On December 8, 2025, Plaintiffs' counsel sent Defendants' counsel an email seeking answers to the following 16 "supplemental deposition questions":

> 1.    Has there been a time when double reporting uncovered wrongdoing that wouldn't have already been apparent from the group's report? If so, what were the details of the wrongdoing and why would it not have been discovered without double reporting?

---

[18] Docket 112-4 at 23.

[19] Docket 112-4 at 23.

[20] Docket 112-4 at 23.

[21] Docket 112-4 at 24.

[22] Docket 112-4 at 29.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 5 of 29
Case 3:22-cv-00077-SLG    Document 171    Filed 06/02/26    Page 5 of 29

2. How many times have the Commissioners rejected the APOC staff's recommendation? What percentage of staff recommendations are rejected by the Commissioners?

3. How many times have the Commissioners rejected the staff's recommendation on penalties? What percentage of staff recommendations on penalties are rejected by the Commissioners?

4. What factors does the Commission use when determining penalty reductions?

5. What steps did APOC take to correct its future conduct after a court found in Alaskans for Honest Elections v. APOC that APOC attributed a cash contribution to the wrong person?

6. Is it the Commissioners' job to analyze constitutional arguments, or to enforce the law as written?

7. Does APOC consider compliance burdens at all when enforcing Ballot Measure 2?

8. Does APOC consider the potential chilling effect of Ballot Measure 2?

9. Does APOC think that the out-of-state disclaimer requirement changes voters' perspective of the speaker?

10. Has APOC noted any changes in reported ad quantity or length since Ballot Measure 2 went into effect? If so, what did APOC observe?

11. Is APOC aware of an instance where the true source reporting requirement caused a change in the quantity or length of ads run by independent expenditure groups? If so, what did APOC observe?

12. Is APOC aware of an instance where the double reporting requirement caused a change in the quantity or length of ads run by independent expenditure groups? If so, what did APOC observe?

13. Is APOC aware of an instance where the spoken out-of-state disclaimer reporting requirement caused a change in the quantity or length of ads run by independent expenditure groups? If so, what did APOC observe?

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 6 of 29
Case 3:22-cv-00077-SLG    Document 171    Filed 06/02/26    Page 6 of 29

14.   Is APOC aware of an instance where the 24-hour reporting requirement caused a change in the quantity or length of ads run by independent expenditure groups? If so, what did APOC observe?

15.   Is APOC aware of an instance where the top three donor reporting requirement caused a change in the quantity or length of ads run by independent expenditure groups? If so, what did APOC observe?

16.   Is APOC aware of an instance where the printed disclaimer reporting requirement caused a change in the quantity or length of ads run by independent expenditure groups? If so, what did APOC observe?[23]

On December 10, 2025, Defendants' counsel responded with four concerns regarding the supplemental questions: (1) "[T]his is the first indication plaintiffs have given that they believed there were any 'issues' with APOC's 30(b)(6) deposition" that had occurred over two months earlier; (2) "Neither your email nor your pleading identifies the questions and answers in the deposition that you believe justify this 'supplement' to that deposition;" (3) "Nor did you hold the deposition open to address any alleged 'issues';" and (4) "[M]any of these questions are beyond the scope of the 30(b)(6) notice that you served on APOC; and others are objectionable for the same reasons that we noted our objection to some of the topics that you did include in your 30(b)(6) notice."[24]   According to

---

[23] Docket 116-2 at 1-2; Docket 112 at 3-5.

[24] Docket 116-2 at 1.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 7 of 29
Case 3:22-cv-00077-SLG     Document 171     Filed 06/02/26     Page 7 of 29

Defendants, Plaintiffs "never responded to this email, and made no other attempts to discuss this issue with APOC."[25]

On December 15, 2025, Plaintiffs filed the instant motion to compel.[26] As relief, Plaintiffs seek an order directing Defendants to produce a witness for APOC to provide full and complete responses to the 16 supplemental deposition questions.[27] In the alternative, Plaintiffs would be "content with written responses" to these 16 questions.[28]

## LEGAL STANDARDS

Federal Rule of Civil Procedure 37(a) allows a party to move for an order compelling another party to make a required disclosure or respond to discovery. The moving party must first "in good faith confer[] or attempt[] to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."[29]

Federal Rule of Civil Procedure 30(b)(6) provides that:

[A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity

---

[25] Docket 116 at 6.

[26] Docket 112.

[27] Docket 112 at 5.

[28] Docket 112 at 5.

[29] Fed. R. Civ. P. 37(a)(1) ("The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."); *see also* D. Alaska L. Civ. R. 37.1 ("The certification required by Fed. R. Civ. P. 37(a)(1) must be in the first paragraph of a discovery motion.").

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 8 of 29
Case 3:22-cv-00077-SLG    Document 171    Filed 06/02/26    Page 8 of 29

and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; . . . . The persons designated must testify about information known or reasonably available to the organization.

## DISCUSSION

In their motion, Plaintiffs contend that Ms. Hebdon was not the appropriate Rule 30(b)(6) witness.[30]  Plaintiffs assert that "[i]f Ms. Hebdon was unable to speak confidently on behalf of the Commission, she should not have been its witness."[31] Plaintiffs also maintain that "[n]one of the sixteen questions they want answers to have anything to do with the 'deliberations' of the Commission," but rather, "[e]ach of the questions has to do with the basic facts of when and how the Commission chooses to take enforcement actions against Alaskans for their political speech."[32]

Defendants respond that Plaintiffs' motion is procedurally deficient because Plaintiffs did not confer in good faith about the matters for examination before filing their motion and further, the motion fails on the merits.[33]

In reply, Plaintiffs assert that (1) Defendants "refuse to say definitively who [Ms. Hebdon] was representing"; (2) Plaintiffs did sufficiently meet and confer; (3)

---

[30] Docket 112-1 at 10 ("The defendants agreed to a deposition of the Commission, and then they produced a witness who insisted 'I don't speak for the Commission.' This Court should compel the defendants to produce someone who does.").

[31] Docket 112-1 at 13.

[32] Docket 112-1 at 12.

[33] Docket 116 at 2-3.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 9 of 29
Case 3:22-cv-00077-SLG     Document 171     Filed 06/02/26     Page 9 of 29

Defendants misapply the deliberative process privilege; and (4) because Ms. Hebdon testified that she did not represent the Commission, Defendants did the functional equivalent to "walking out" of the deposition.[34]

## I.    Meet and Confer Requirement

Defendants contend that Plaintiffs' "motion is procedurally improper because the plaintiffs failed to actively engage in—let alone exhaust—the meet and confer requirements found in Federal Rule of Civil Procedure 37(a)(1)."[35] Defendants assert that Plaintiffs "far overstate[] the minimal 'meet and confer' attempts the plaintiffs made," which were merely "a brief discussion during the deposition, and a single back-and-forth email exchange two months afterwards."[36]

Plaintiffs respond that "[i]f anyone violated their obligation to meet-and-confer, it is the defendants."[37] Plaintiffs emphasize that the "deposition was intended for each of the defendants, but changed to a Rule 30(b)(6) deposition out of separation-of-powers concerns."[38] They maintain that Defendants' October 2[39] "email was not a good-faith effort, and the plaintiffs' response politely gave the

---

[34] Docket 118 at 8, 11, 17-18.

[35] Docket 116 at 2.

[36] Docket 116 at 8.

[37] Docket 118 at 8.

[38] Docket 118 at 8.

[39] Defendants' opposition brief states that this communication occurred on October 3, 2025. Docket 116 at 3. This appears to be in error, and the correct date is October 2, 2025. *See* Docket 116-1 at 1-2 (October 2, 2025 email from Defendants' counsel to Plaintiffs' counsel).

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 10 of 29

defendants the opportunity to articulate their concerns—which they declined to do."[40]

Federal Rule of Civil Procedure 37(a)(1) requires that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."

The Court agrees with Defendants that Plaintiffs' attempts to obtain additional discovery after the October 6 deposition before they filed their motion were inadequate.  Indeed, Plaintiffs' certification only discusses the October 6, 2025 deposition, and not any efforts after the deposition to try to resolve the dispute.[41]

And yet Plaintiffs did contact Defendants' counsel on December 8, 2025 asking for the supplemental discovery responses prior to filing their motion.[42]  And while Plaintiffs did not reply to Defendants' counsel's December 10 response, Defendants' response may suggest that the parties could not independently resolve the discovery dispute as it concludes with the following sentence: "Without further explanation from you as to why these questions are proper, the State does

---

[40] Docket 118 at 9-11.

[41] *See* Docket 112-2 at 1-6.

[42] Docket 116-2 at 1-2.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 11 of 29

not intend to respond."[43]  Although the Court finds Plaintiffs' December efforts to confer on this discovery dispute before filing its motion to be marginal at best, the Court will nonetheless address the merits of Plaintiffs' motion.

## II. Supplemental Questions ("SQs") 1, 2, 3, 5, 14, and 15

Defendants assert that "many of [Plaintiffs'] 'supplemental questions' are improper because the plaintiffs did not ask these questions during the deposition or hold the deposition open."[44]  Defendants contend that SQ1, SQ2, SQ3, SQ5, SQ14, and SQ15 "should be rejected because the plaintiffs cannot show that they asked these questions at the deposition much less that they received a somehow deficient answer."[45]

In neither their reply nor their motion do Plaintiffs identify the specific portions in Ms. Hebdon's deposition where they believe these questions were asked.  Rather, it appears that Plaintiffs maintain that they were unable to ask and/or receive appropriate responses from Ms. Hebdon to these questions because Defendants "ended the deposition against the plaintiffs' wishes."[46]

The Court has reviewed the deposition transcript and disagrees with Plaintiffs' characterization of it.  The deposition concluded with Plaintiffs' counsel

---

[43] Docket 116-2 at 1.

[44] Docket 116 at 9, 13.

[45] Docket 116 at 13.

[46] Docket 118 at 18.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 12 of 29

Case 3:22-cv-00077-SLG   Document 171   Filed 06/02/26   Page 12 of 29

responding to the videographer's question "Anything further from anybody?" with "I think that's all from the plaintiffs," shortly after which the deposition concluded.[47] The Court finds nothing in the transcript to indicate that Defendants ended the deposition against Plaintiffs' wishes.

Because Plaintiffs have not identified where they posed each of these questions to Ms. Hebdon at her deposition and where she refused to answer them, Plaintiff's motion to compel Defendants to answer SQ1, SQ2, SQ3, SQ5, SQ14, and SQ15 is DENIED.

### III.     Supplemental Questions 9, 10, 11, 12, 13, and 16

Defendants assert that "several of the questions were asked and answered during the deposition and the plaintiffs have failed to show that the answers were deficient in some way."[48] Defendants highlight the fact that Plaintiffs' "motion contains no explanation as to how or why those answers" to SQ9, SQ10, SQ11, SQ12, SQ13, and SQ16 were deficient.[49] The Court addresses each of the identified supplemental questions in turn:

> **SQ9**: Does APOC think that the out-of-state disclaimer requirement changes voters' perspective of the speaker?

---

[47] Docket 112-4 at 29 ("Let me close it out then. This concludes the 30(b)(6) video deposition of the Alaska Public Offices Commission by representative Heather Hebdon.").

[48] Docket 116 at 9.

[49] Docket 116 at 14-15.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 13 of 29

Case 3:22-cv-00077-SLG     Document 171     Filed 06/02/26     Page 13 of 29

During Ms. Hebdon's deposition, Plaintiffs asked the following question: "Do you think that -- do you think that having that disclaimer on there might change people's perception of the message?"[50] Although Defendants' counsel objects two times during this exchange, she does direct Ms. Hebdon to "[a]nswer if you can."[51] And Ms. Hebdon did ultimately answer the question with the following: "I mean, there's many variables. I -- I think it really depends on the subject of the ad, whether it's a candidate ad, whether it's a ballot initiative. I mean, there's a lot of variables that go into what might change public perspective."[52] At the end of this exchange, Plaintiffs' counsel turns to questions concerning his next exhibit.[53] Having asked and received an answer, Plaintiffs' motion to compel Defendants to answer SQ9 is DENIED.

> **SQ10**: Has APOC noted any changes in reported ad quantity or length since Ballot Measure 2 went into effect? If so, what did APOC observe?

At Ms. Hebdon's deposition, Plaintiffs asked: "On the on-air reporting stuff, is -- stuff, is APOC aware of any instance in which [. . .] that additional requirement has reduced the [. . .] number of ads people are running?"[54] Ms. Hebdon responded with "I'm not aware of that, no" and then answered "No" several more

---

[50] Docket 112-4 at 26.

[51] Docket 112-4 at 26.

[52] Docket 112-4 at 26.

[53] Docket 112-4 at 26.

[54] Docket 112-4 at 28.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 14 of 29
Case 3:22-cv-00077-SLG    Document 171    Filed 06/02/26    Page 14 of 29

times.[55]   Although Plaintiffs may not be satisfied with this response and Defendants' counsel objected several times, Ms. Hebdon answered Plaintiffs' series of questions on this topic.  Thus, Plaintiffs' motion to compel Defendants to answer SQ10 is DENIED.

> **SQ11**: Is APOC aware of an instance where the true source reporting requirement caused a change in the quantity or length of ads run by independent expenditure groups? If so, what did APOC observe?

At the deposition, Plaintiffs asked Ms. Hebdon three questions relating to the true source reporting requirement's impact on the number of ads: (1) "[I]s APOC aware of any instance in which the true source reporting requirement has chilled speech?"; (2) "[Is] APOC aware of any instance in which the true source requirement has ca- -- has caused the reduction in the number of ads people are running?"; and (3) "Have you made inquiry about the – about people running fewer ads, the first thing I asked about?"[56]  Ms. Hebdon responded to each question with "No" or that she is "not aware of that" (or equivalent).[57]  And during this series of questioning, Defendants' counsel did not interrupt or object.  Having received an answer to these questions, Plaintiffs' motion to compel Defendants to answer SQ11 is DENIED.

> **SQ12**: Is APOC aware of an instance where the double reporting requirement caused a change in the quantity or length of ads run by independent expenditure groups? If so, what did APOC observe?

---

[55] Docket 112-4 at 28.

[56] Docket 112-4 at 27.

[57] Docket 112-4 at 27.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 15 of 29

Case 3:22-cv-00077-SLG   Document 171   Filed 06/02/26   Page 15 of 29

At Ms. Hebdon's deposition, Plaintiffs first asked: "if APOC aware of any instance in which that dual reporting requirement has chilled speech."[58]  Then, Plaintiffs asked: "Is APOC aware of any instance in which people have -- in which people have decreased their donations because of that" "or just decline to participate because that -- declining to give the donations because of the compliance burden?"[59]  In response to all these questions, Ms. Hebdon responded: "No" or "I'm not aware of that, no."[60]  Because Plaintiffs received answers to these questions, Plaintiffs' motion to compel Defendants to answer SQ12 is DENIED.

> **SQ13**: Is APOC aware of an instance where the spoken out-of-state disclaimer reporting requirement caused a change in the quantity or length of ads run by independent expenditure groups? If so, what did APOC observe?

At Ms. Hebdon's deposition, Plaintiffs asked: "Is APOC aware of . . . the out-of-state aspect of the on-air  disclaimer, is APOC aware of any instance in which that has chilled speech?"[61]  After Ms. Hebdon responded "No," Plaintiffs' counsel asked a series of follow-up questions concerning "any reduction in participation," "decrease in donations," or "inquiries or investigations," to which Ms. Hebdon responded "No."[62]  At that point, Plaintiffs' counsel concluded his questioning on

---

[58] Docket 112-4 at 27.

[59] Docket 112-4 at 28.

[60] Docket 112-4 at 27-28.

[61] Docket 112-4 at 28.

[62] Docket 112-4 at 28.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 16 of 29
Case 3:22-cv-00077-SLG     Document 171     Filed 06/02/26     Page 16 of 29

this topic.[63]   Having received answers to their questions, Plaintiffs' motion to compel Defendants to answer SQ13 is DENIED.

> **SQ16**: Is APOC aware of an instance where the printed disclaimer reporting requirement caused a change in the quantity or length of ads run by independent expenditure groups? If so, what did APOC observe?

At the deposition, Plaintiffs asked Ms. Hebdon whether "requiring extensive disclaimers being included in the ad takes up space" and would thus impact the substance of the ad.[64]  Ms. Hebdon responded: "I mean, theoretically, yes."[65]  Ms. Hebdon later testified that these printed disclaimer requirements do not discourage people from running ads: "My experience is that they continue to run the ads and they comply."[66]  Later in the deposition, Ms. Hebdon testified that she is not aware of "people changing the length or size of ads because of the disclaimers . . . imposed by Ballot Measure 2."[67]  Having received answers to their questions on this topic, Plaintiffs' motion to compel Defendants to answer SQ16 is DENIED.

In their opposition brief, Defendants also assert that SQ9, SQ10, SQ11, SQ12, SQ13, and SQ16 are beyond the scope of the Rule 30(b)(6) notice.[68]

---

[63] Docket 112-4 at 28 ("I think I'll call it").

[64] Docket 112-4 at 25.

[65] Docket 112-4 at 25.

[66] Docket 112-4 at 26.

[67] Docket 112-4 at 28.

[68] Docket 116 at 2.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 17 of 29
Case 3:22-cv-00077-SLG    Document 171    Filed 06/02/26    Page 17 of 29

Having found that SQ9, SQ10, SQ11, SQ12, SQ13, and SQ16 were all asked and adequately answered during the deposition, the Court does not address whether these proposed supplemental questions were within the scope of the Rule 30(b)(6) notice.

### IV. Supplemental Questions 4, 6, 7, and 8

With respect to the remaining proposed supplemental questions, Plaintiffs maintain that Defendants did not satisfy Rule 30(b)(6) because they provided a witness who testified that "I don't speak for the Commission."[69]  Plaintiffs contend that effectively, Defendants "promise[d] to answer everything in depositions, schedule[d] a deposition near the end of discovery, and then just cancel[led] at the last minute."[70]

Defendants respond that these questions seek to "inquire about the Commission's deliberations, which are protected by the adjudicatory/deliberative process privilege, and also are irrelevant to the issues in this case."[71]

In their reply, Plaintiffs assert that Defendants' "brief continues to obfuscate about what the Commission is and who Ms. Hebdon was testifying for."[72]  They maintain that "[i]f the Commission is some intangible body that 'exists only as a

---

[69] Docket 112-1 at 10; *see also* Docket 112-1 at 13 ("If Ms. Hebdon was unable to speak confidently on behalf of the Commission, she should not have been its witness.").

[70] Docket 112-1 at 11.

[71] Docket 116 at 7.

[72] Docket 118 at 4.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 18 of 29

body and "speaks" only through its decisions,' like a legislature or a court, then it would not make any sense to have a now-four-year-long legal battle over an *Ex parte Young* doctrine claim."[73]

### a. Rule 30(b)(6) Deponent

Rule 30(b)(6) provides, "[i]n its notice or subpoena, a party may name as the deponent . . . a governmental agency, or other entity and must describe with reasonable particularity the matters for examination." "The person[] designated [by the named organization] must testify about information known or reasonably available to the organization."[74]

In *Mi Familia Vota v. Fontes*, the plaintiffs sought to compel "the Arizona Legislature to designate (a) deponent(s) who 'can testify as to the collective knowledge' of the Legislature."[75] The district court denied the plaintiffs' "request to compel the Arizona House of Representatives and Senate to prepare a 30(b)(6) deponent to testify as to these topics because doing so would intrude upon the protections afforded by the legislative privilege."[76] The court agreed with the

---

[73] Docket 118 at 6 (quoting *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011)).

[74] Fed. R. Civ. P. 30(b)(6).

[75] 691 F. Supp. 3d 1105, 1112 (D. Ariz. 2023) (citation omitted).

[76] *Id.* at 1112 (citing *All. for Glob. Justice v. District of Columbia*, 437 F. Supp. 2d 32, 37 (D.D.C. 2006); and then citing *Puente Ariz. v. Arpaio*, 314 F.R.D. 664, 671 (D. Ariz. 2016)).

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 19 of 29

Legislature "that a 30(b)(6) deposition of the Arizona Legislature 'would effectively force a waiver of every single legislator's individual legislative privilege.'"[77]

The Court finds that Defendants' selection of Ms. Hebdon as the 30(b)(6) deponent complied with Rule 30(b)(6). Plaintiffs' deposition notice was sent to the five individuals that make up the Commission—not to the organization itself—because, as noted by Plaintiffs, these individual Defendants, who "collectively run the Alaska Public Offices Commission," have been sued in their official capacities under an *Ex parte Young* theory.[78] APOC is a five-member Commission that, as noted by Defendants, like other government boards and commissions, "consists of a number of appointed commissioners, supported by agency staff."[79] Similar to a state legislature, only a quorum of the APOC Commissioners can speak on behalf of the APOC as an adjudicative body.[80] Thus, the Court agrees with Defendants that while "an 'agency' can be deposed," "a quasi-adjudicatory body" cannot be deposed, because "[t]he 'commission'—as distinct from the agency and staff—

---

[77] *Id.* at 1111.

[78] Docket 118 at 5 (first citing *Virginia Office for Prot. & Advocacy*, 563 U.S. at 255; and then citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)).

[79] Docket 116 at 9-10; *see also Lee v. City of Los Angeles*, 908 F.3d 1175, 1184 (9th Cir. 2018) ("However, [Commissioner] Ellison and [Commissioner] Wesson were only two people in a process that incorporated multiple layers of decisions and alterations from the entire Commission, as well as the City Council.").

[80] Docket 116 at 6.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 20 of 29
Case 3:22-cv-00077-SLG     Document 171     Filed 06/02/26     Page 20 of 29

exists only as a *body* and 'speaks' only through its decisions" and "[a]s such, it cannot be 'deposed' in the way the plaintiffs appear to want."[81]

In light of the foregoing, the Court finds APOC's Executive Director is a proper Rule 30(b)(6) witness to testify about the agency's operations and processes.

### b. Deliberative process privilege

Plaintiffs assert that they "have no interest in the internal policy preferences of the Commissioners" and "don't care what happens behind closed doors in the Commissions meetings," but rather "just want to know what possible rationale the Commissioners may have for insisting that Ballot Measure 2 can be enforced fairly and equally."[82]

Defendants assert that the deliberative process privilege applies and that Plaintiffs "have failed to point to any specific questions not inquiring into Commission deliberations that Ms. Hebdon declined to answer."[83] In their opposition brief, Defendants quote two cases in support of this assertion. Defendants first quote the Supreme Court's decision in *Citizens to Preserve*

---

[81] Docket 116 at 10 (emphasis in original).

[82] Docket 118 at 8; *see also* Docket 118 at 9 ("The plaintiffs knew that it was possible the Commissioners would claim they engaged in policymaking discussions at their meetings . . . . [Plaintiffs] modified their initial deposition request—still labeled as to each of the defendants—so it would be conducted under [Rule 30(b)(6)]. This would give the defendants the opportunity to present a witness who could talk about the Commission's enforcement policies in one voice, and thus avoid any appearance that the plaintiffs wanted to know what the Commissioners does behind closed doors.").

[83] Docket 116 at 11.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 21 of 29

Case 3:22-cv-00077-SLG    Document 171    Filed 06/02/26    Page 21 of 29

*Overton Park, Inc. v. Volpe* for the proposition that "inquiry into the mental processes of administrative decisionmakers is usually to be avoided. And where there are administrative findings that were made at the same time as the decision . . . there must be a strong showing of bad faith or improper behavior before such inquiry may be made."[84]  Second, Defendants quote from this Court's decision in *Center for Biological Diversity v. Zinke*, for the proposition that "the actual subjective motivation of agency decisionmakers is immaterial as a matter of law, . . . [j]ust as a judge cannot be subjected to . . . scrutiny . . . so the integrity of the administrative process must be equally respected."[85]

Plaintiffs respond that Defendants "are obfuscating what 'deliberative process privilege' they are asserting; no privilege exists to exempt them from answering the plaintiffs' common sense questions."[86]  According to Plaintiffs, this

---

[84] Docket 116 at 12 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) [hereinafter *Overton Park*], *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

[85] Docket 116 at 12 (*Ctr. for Biological Diversity v. Zinke*, Case No. 3:18-cv-00064-SLG, 2018 WL 8805325, at *4 (D. Alaska Nov. 16, 2018)).

Here, Defendants combine two quotes by this Court from the D.C. Circuit and the Supreme Court.  This Court's order first stated: "The Court finds persuasive the D.C. Circuit's reasoning that 'the actual subjective motivation of agency decisionmakers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior.'" *Ctr. for Biological Diversity*, 2018 WL 8805325, at *4 (quoting *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998)). In the following sentence, the order states: "'Just as a judge cannot be subjected to . . . scrutiny [over which documents the judge considers in making decisions and the weight that the judge gives each document], . . . so the integrity of the administrative process must be equally respected.'" *Id.* (quoting *United States v. Morgan*, 313 U.S. 407, 422 (1941)).

[86] Docket 118 at 11.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 22 of 29

information is necessary because Defendants "are the ones asserting that they can enforce the law in a constitutional manner (something plaintiffs contend is impossible), and the defendants are the ones who produced expert witnesses that, in deposition, asserted that any concerns over subjectivity in the law are negated by the wise discretion of the Commissioners in how they choose to enforce (or not enforce) the law."[87]

The deliberative process "privilege exempts from discovery information reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which government decisions and policies are formulated."[88] "To fall within the deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'"[89]

---

[87] Docket 118 at 13. Plaintiffs also provide multiple exhibits that Plaintiffs maintain reveal APOC's practice of giving "preferential treatment to some inquirers over others." Docket 118 at 13-14 (citing Docket 118-1 at 22-25 (Emails between Alaskans for Honest Government and APOC); Docket 118-1 at 27-28 (Email from Heather Hebdon regarding group formation); Docket 118-1 at 30 (Excerpt from Final Order in APOC Case No. 24-03-CD); Docket 118-1 at 46-51 (Emails between Keep It Alaska and APOC)).

[88] *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1019 (E.D. Cal. 2010) (citing *FTC v. Warner Commc'ns, Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984)).

[89] *Carter v. U.S. Dep't of Com.*, 307 F.3d 1084, 1089 (9th Cir. 2002) (quoting *Assembly of California v. U.S. Dep't of Com.*, 968 F.2d 916, 920 (9th Cir. 1992)).

While the deliberative process privilege is usually applied to documents, district courts in this Circuit have applied the deliberative process privilege to deposition testimony. *See Kay v. City of Rancho Palos Verdes*, Case No. CV 02-03922 MMM(RZ), 2003 WL 25294710, at *16 (C.D. Cal. Oct. 10, 2003) ("Most of the cases dealing with this [deliberative process] privilege involve documents, although presumably the protection applies analogously to other communications, including oral statements, as well."); *Stott Outdoor Advert. v. County of Monterey*, Case No. C06-00891 RMW (HRL), 2007 WL 460647, at *2 (N.D. Cal. Feb. 7, 2007) ("The [deliberative process] privilege applies to deposition testimony as well as written documents.").

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 23 of 29

Case 3:22-cv-00077-SLG     Document 171     Filed 06/02/26     Page 23 of 29

A predecisional document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. A predecisional document is a part of the deliberative process, if the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.[90]

Plaintiffs quote *FTC v. Warner Communications, Inc.* for the proposition that the deliberative process privilege is a qualified, rather than an absolute privilege.[91] Plaintiffs then cite to *American Federation of Government Employees (AFGE) v. Trump* for the proposition that the Ninth Circuit in that case "[reaffirmed] that the *Warner Communications* test remains alive and well, despite its age."[92] Plaintiffs also quote this Court's decision in *Roberts v. City of Fairbanks* for the proposition that "[t]he deliberative process privilege is generally invoked for adjudicatory decisions by the government, such as deciding whether or not to pursue a certain plea agreement" and then, "in Alaska, there is also a deliberative process privilege

---

[90] *Carter*, 307 F.3d at 1089 (internal quotations omitted) (quoting *Assembly of California*, 968 F.2d at 920).

[91] Docket 118 at 11-12 (quoting *Warner Commc'ns*, 742 F.2d at 1161).

The two quoted portions are: (1) "The deliberative process privilege is a qualified one. A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure"; and (2) "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Warner Commc'ns,* 742 F.2d at 1161 (citations omitted).

[92] Docket 118 at 12 (citing *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 163 F.4th 1226, 1230 (9th Cir. 2026)); *see also AFGE*, 163 F.4th at 1231 ("There was no error in the district court's application of *Warner* [*Communications*]").

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 24 of 29

for 'internal communications made within the executive branch' on administrative matters."[93]  Plaintiffs also cite to the portion of an Attorney General memo that states: "The privilege purports to cover internal communications within the executive branch at the federal, and state level."[94]

According to Plaintiffs, *Overton Park* and *Center for Biological Diversity* are not applicable here because "[b]oth of those cases were statutory litigation regarding the scope of privileges under the United States Administrative Procedures Act in a challenge to federal agency rulemaking."[95]  Plaintiffs stress that "[t]his litigation is not an appeal of an adjudicatory decision, and it is not a challenge to administrative rulemaking."[96]  Rather, Plaintiffs characterize this action as "litigation on the constitutionality of Ballot Measure 2" where "[t]he Commissioners are being sued in their capacity as law enforcement officers" because they have allegedly "[administered] the law unfairly and arbitrarily."[97]

Plaintiffs are correct that *Overton Park* was an action brought under the APA challenging agency rulemaking.[98]  However, *Overton Park* is nonetheless

---

[93] Docket 118 at 12 (first citing *Roberts v. City of Fairbanks*, Case No. 4:17-cv-00034-SLG, 2022 WL 889401, at *9 (D. Alaska Mar. 25, 2022); and then citing Op. Alaska Att'y Gen. 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 (Jan. 1, 1993)).

[94] Op. Alaska Att'y Gen. No. 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, at 2 (Jan. 1, 1993) (citing *U.S. v. Nixon*, 418 U.S. 683 (1974)).

[95] Docket 118 at 12.

[96] Docket 118 at 13.

[97] Docket 118 at 13-14, 16.

[98] Docket 118 at 12 (citing *Overton Park*, 401 U.S. at 410).

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 25 of 29

Case 3:22-cv-00077-SLG   Document 171   Filed 06/02/26   Page 25 of 29

applicable for the proposition that the government may shield from discovery its internal deliberations that seek to probe the "mental processes of administrative decisionmakers."[99] As the Ninth Circuit explained in *In re United States*: "Where—as in *Mothers for Peace*—an agency is headed by a multi-member board, the deliberations among those members are analogous to the internal mental processes of the sole head of an agency, and thus are generally not within the scope of the administrative record."[100]

Although Plaintiffs maintain that the requested responses to the supplemental questions related to the enforcement of Ballot Measure 2's provisions (namely, SQ2, SQ3, SQ4, SQ6, SQ7, and SQ8) are necessary given Plaintiffs' First Amendment challenge, the Ninth Circuit has held that "[e]ven where a plaintiff must prove invidious purpose or intent, as in racial discrimination cases, the [Supreme] Court has indicated that only in extraordinary circumstances might members of the legislature be called to testify, and even in these circumstances the testimony may be barred by privilege."[101] Although in the context of legislative privilege, rather than adjudicatory privilege, the Ninth Circuit recognized that "[t]he

---

[99] *Overton Park*, 401 U.S. at 420.

[100] 875 F.3d 1200, 1210 (9th Cir. 2017) (citing *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1549 (9th Cir. 1993)). *In re United States*, 875 F.3d 1200 (9th Cir. 2017) was later vacated on procedural grounds by *In re United States*, 583 U.S. 29 (2017), but the Court still finds the reasoning in the now vacated opinion persuasive.

[101] *City of Las Vegas v. Foley*, 747 F.2d 1294, 1298 (9th Cir. 1984) (citing *Village of Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 268 (1977)); *see also In re U.S. Dep't of Educ.*, 25 F.4th 692, 702, 705 (9th Cir. 2022) (ordering the district court to quash the subpoena of the former Secretary of Education).

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 26 of 29

Case 3:22-cv-00077-SLG     Document 171     Filed 06/02/26     Page 26 of 29

Court prevents inquiry into the motives of legislators because it recognizes that such inquiries are a hazardous task. Individual legislators may vote for a particular statute for a variety of reasons."[102]

In *Lee v. City of Los Angeles*, the plaintiffs sought to depose the Mayor of Los Angeles, the City Council President, a City Councilmember, and a former City Councilmember.[103] There, the plaintiffs brought three claims alleging that the city's redistricting plan violated: (1) the Equal Protection Clause of the Fourteenth Amendment; (2) the City Charter; and (3) the California Constitution.[104] The Ninth Circuit upheld the trial court's barring of the depositions of the city officials involved in the redistricting process.[105] The plaintiffs there had argued that the privilege should not apply because they claimed an Equal Protection claim of racial gerrymandering, and there should be "a categorical exception whenever a constitutional claim directly implicates the government's intent."[106] But the Ninth

---

[102] *Foley,* 747 F.2d at 1297–98 (first citing *United States v. O'Brien,* 367 U.S. 391. 384 (1968); and then citing *Michael M. v. Sonoma Cnty. Super. Ct.,* 450 U.S. 464, 469-70 (1981)); *see also Soon Hing v. Crowley,* 113 U.S. 703, 710–11 (1885) ("The diverse character of such motives, and the impossibility of penetrating into the hearts of men and ascertaining the truth, precludes all such inquiries as impracticable and futile.").

[103] 908 F.3d at 1181.

[104] *Id.* at 1181-82.

[105] *Id.* at 1186.

[106] *Id.* at 1188.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 27 of 29
Case 3:22-cv-00077-SLG    Document 171    Filed 06/02/26    Page 27 of 29

Circuit rejected that argument because such an exception would render the privilege "of little value."[107]

SQ4, SQ6, SQ7, and SQ8 are reproduced as follows:

**SQ4**: What factors does the Commission use when determining penalty reductions?

**SQ6**: Is it the Commissioners' job to analyze constitutional arguments, or to enforce the law as written?

**SQ7**: Does APOC consider compliance burdens at all when enforcing Ballot Measure 2?

**SQ8**: Does APOC consider the potential chilling effect of Ballot Measure 2?[108]

Each of these supplemental questions inquires into the predecisional and deliberative process of the APOC as an adjudicatory body. These questions ask how the Commission determines penalties (SQ4), APOC's considerations relating to enforcement (SQ6 and SQ7), and APOC's consideration of the policy impact of Ballot Measure 2 (SQ8). These supplemental questions seek to "impermissibly inquire into the mental processes of [APOC] Committee members."[109] Although portions of the questions inquire about facts and evidence, which is not

---

[107] *Id.* (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)).

[108] Docket 112 at 3-4.

[109] *Portland Audubon Soc.*, 984 F.2d at 1548.

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 28 of 29
Case 3:22-cv-00077-SLG     Document 171     Filed 06/02/26     Page 28 of 29

privileged,[110] "factual material that 'is so interwoven with the deliberative material that it is not severable' may be encompassed by the privilege."[111]

For the foregoing reasons, the Court finds that Supplemental Questions 4, 6, 7, and 8 are barred by the deliberative process privilege and the motion to compel Defendants to answer each of them must be denied.

### CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel Full & Complete Deposition Responses at Docket 112 is **DENIED**.

DATED this 2nd day of June 2026, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[110] *United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, Case No. CV 16-8697 MWF (SSX), 2018 WL 8459926, at *9 (C.D. Cal. Dec. 14, 2018) (quoting *Warner Commc'ns*, 742 F.2d at 1161) ("[I]t is widely accepted that the privilege protects opinions and deliberations, but generally not 'facts and evidence.'").

[111] *Id.* (quoting *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000)).

Case No. 3:22-cv-00077-SLG, *Griffin, et al. v. Stillie, et al.*
Order on Motion to Compel
Page 29 of 29
Case 3:22-cv-00077-SLG   Document 171   Filed 06/02/26   Page 29 of 29